### STATE OF CONNECTICUT *v.* JUAN PARRA
### (SC 16030)

McDonald, C. J., and Berdon, Norcott, Katz and Sullivan, Js.

Argued September 23—officially released December 14, 1999

618

*Jose L. DelCastillo*, for the appellant (defendant).

*Ellen A. Jawitz*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Corinne Klatt*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant, Juan Parra, was charged with, inter alia, manslaughter in the second degree with a motor vehicle in violation of General Statutes § 53a-56b,[1] based upon an accident that occurred on November 18, 1990. After rejecting an earlier plea agreement between the defendant and the state, the court accepted the defendant's plea of nolo

[1] General Statutes § 53a-56b provides in relevant part: "A person is guilty of manslaughter in the second degree with a motor vehicle when, while operating a motor vehicle under the influence of intoxicating liquor or any drug or both, he causes the death of another person as a consequence of the effect of such liquor or drug. . . ."

contendere on June 28, 1991, and rendered judgment thereon. The defendant subsequently filed a motion to vacate the 1991 judgment and to withdraw his plea on November 4, 1997. The issue to be resolved in this appeal is whether Public Acts 1997, No. 97-256, § 6 (P.A. 97-256), which amended General Statutes § 54-1j[2] by, inter alia, limiting the time within which a defendant may move to vacate a judgment and withdraw a plea,

[2] At the time the defendant committed the crime and at the time he entered his plea of nolo contendere, General Statutes § 54-1j provided: "Court instruction on possible immigration and naturalization ramifications of guilty or nolo contendere plea. (a) The court shall not accept a plea of guilty or nolo contendere from any defendant in any criminal proceeding unless the court advises him of the following: 'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.'

"(b) The defendant shall not be required at the time of the plea to disclose his legal status in the United States to the court.

"(c) If the court fails to advise a defendant as required in subsection (a) of this section and the defendant *later at any time* shows that his plea and conviction may have one of the enumerated consequences, the court, on the defendant's motion, shall vacate the judgment, and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty. In the absence of a record that the court provided the advice required by this section, the defendant shall be presumed not to have received the required advice." (Emphasis added.) General Statutes (Rev. to 1991) § 54-1j; accord General Statutes (Rev. to 1989) § 54-1j.

In 1997, § 54-1j was amended by P.A. 97-256, § 6, limiting the time within which a defendant can move to vacate a judgment and withdraw his or her plea, and eliminating the presumption contained in the last sentence of subsection (c). The retroactivity of this time limit, as it applies to the defendant's motion to vacate his judgment of conviction and withdraw his plea, is the sole issue of this appeal.

The relevant portion of the amended version of § 54-1j provides: "If the court fails to advise a defendant as required in subsection (a) of this section and the defendant *not later than three years after the acceptance of the plea* shows that his plea and conviction may have one of the enumerated consequences, the court, on the defendant's motion, shall vacate the judgment, and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty." (Emphasis added.) General Statutes (Rev. to 1997) § 54-1j (c), as amended by Public Acts 1997, No. 97-256, § 6.

should be applied retroactively to crimes committed prior to October 1, 1997, the effective date of the amendment. We conclude that, in enacting P.A. 97-256, § 6, the legislature clearly intended to apply such time limit retroactively. Therefore, because the defendant's motion to vacate the judgment and withdraw his plea was filed six years after the judgment was rendered, his motion is barred by the three year statute of limitations established by P.A. 97-256, § 6. Accordingly, we affirm the trial court's denial of that motion.[3]

## I

### FACTUAL BACKGROUND

The record discloses the following relevant facts. On November 18, 1990, the defendant was the driver of a car that was involved in a motor vehicle accident. That accident caused the death of one of his passengers. The defendant was charged with, inter alia, operating a motor vehicle while intoxicated in violation of General Statutes § 14-227a,[4] and manslaughter in the second degree with a motor vehicle in violation of § 53a-56b. A test of the defendant's blood performed at a hospital

---

[3] In light of our conclusion that P.A. 97-256, § 6, applies retroactively, we need not reach the state's two alternative grounds for affirmance, namely that: (1) the trial court's ruling should be affirmed because the defendant had failed to make a threshold showing that his plea of nolo contendere and conviction could have one of the consequences enumerated in § 54-1j (a) on his immigration status; and (2) the trial court's ruling should be affirmed because the defendant was advised, at a prior plea canvass, just two months before he entered his plea of nolo contendere, that his plea could result in deportation.

[4] General Statutes (Rev. to 1989) § 14-227a provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state . . . (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight. . . ."

after the accident revealed that the defendant had a blood alcohol level of 0.161 percent.

On May 3, 1991, the defendant attempted to plead guilty to the charge of manslaughter in the second degree with a motor vehicle. During the plea canvass, the trial court informed the defendant of the potential effect of a guilty plea on his immigration status by stating: "You know if you are not a citizen of the United States, when you plead guilty to a charge such as this, a felony charge, you leave yourself open to the possibility of deportation from the United States." The defendant responded yes. The trial court, however, subsequently rejected that plea agreement.

On June 28, 1991, both the state and the defendant reappeared before the trial court with a revised plea agreement. At the June 28 plea canvass, the court failed to advise the defendant, pursuant to § 54-1j (a), of the consequences that his plea could have on his immigration status. The court accepted the defendant's plea of nolo contendere to the charge of manslaughter in the second degree with a motor vehicle, rendered a judgment of conviction and sentenced him to eight years incarceration, suspended after five years, followed by three years probation with special conditions. The state nolled all other remaining charges.

On November 4, 1997, the defendant filed a motion to vacate the 1991 judgment and withdraw his plea of nolo contendere on the ground that, during its plea canvass on June 28, 1991, the trial court had failed to inform him of the possible consequences that his plea could have on his immigration status, as required by § 54-1j (a). On July 20, 1998, the trial court concluded that P.A. 97-256, § 6, amended § 54-1j by limiting the time within which a defendant can move to withdraw his or her plea pursuant to § 54-1j to three years from the date of the court's acceptance of the plea. The

court further found that the statute of limitations was procedural in nature and, therefore, applied retroactively. Because more than three years had passed between June 28, 1991, when the court had accepted the defendant's plea of nolo contendere, and November 4, 1997, when the defendant had filed his motion to vacate the judgment and withdraw his plea, the trial court denied the defendant's motion. Subsequently, the defendant appealed the denial of his motion to the Appellate Court, and this court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

## II

### METHOD OF STATUTORY INTERPRETATION

As the parties recognize, whether P.A. 97-256, § 6, applies retroactively is a question of law to which this court gives plenary review. E.g., *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 318, 702 A.2d 1180 (1997) (employing plenary standard of review to determine whether statute of limitations applies retroactively). Generally, "[i]n construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Ferrigno* v. *Cromwell Development Associates*, 244 Conn. 189, 195, 708 A.2d 1371 (1998).

In this case, rather than employing the normal means of statutory interpretation, the defendant argues in his brief that P.A. 97-256, § 6, should not be given retroactive application "absent language demonstrating a clear legislative intent" for such application. By the phrase

"absent language," we assume that the defendant means absent *statutory* language. Thus, the defendant appears to argue that P.A. 97-256, § 6, may have retroactive application only if the words of the public act itself indicate that the legislature intended such retroactive application, without resorting to its legislative history.[5] The state, in contrast, argues that we should examine the public act's legislative history in determining whether the legislature intended P.A. 97-256, § 6, to apply retroactively. For reasons we discuss hereinafter, we conclude that it is proper to look beyond the words of the public act and to examine its legislative history in determining whether the legislature intended P.A. 97-256, § 6, to apply retroactively.

We begin our analysis by noting that, in *State* v. *Paradise*, 189 Conn. 346, 353, 456 A.2d 305 (1983), this court looked solely to the language of the statute it was construing, and not to the statute's legislative history, in determining whether a statute of limitations applied retroactively. In *Paradise*, the state argued that an amendment that extended the time within which certain felonies could be prosecuted applied retroactively to the defendants. The court in *Paradise* held that, because the statute's language did not "clearly necessitat[e]" a retrospective application of the amendment, none would be given. Id. The court reasoned: "Legislative intent is to be found in the language of the statute. . . . There is nothing in [the statute at issue] which indicates a clear legislative intent that the statute have a retrospective effect. Certainly there is no language whatsoever which makes a retrospective construction

---

[5] In his brief to this court, the defendant argues that, "[h]ad the legislature intended [P.A. 97-256, § 6] to apply retroactively, it would have made its intent clear *in the language of the statute*." (Emphasis added.) Therefore, we treat the defendant's subsequent argument examining the legislative history of § 54-1j as an argument in the alternative, were this court to conclude that it is free to look beyond the language of P.A. 97-256, § 6, in determining whether the legislature intended it to apply retroactively.

necessary. *State* v. *Jones*, [132 Conn. 682, 685, 47 A.2d 185 (1946)]. . . . *[C]riminal statutes are not to be accorded retrospective effect absent language clearly necessitating such a construction . . . .*" (Citations omitted; emphasis added.) *State* v. *Paradise*, supra, 353.

Thus, the court's reliance upon the holding in *Jones* that, "in a criminal case a retrospective construction of a statute should not be adopted unless its language clearly makes such a construction necessary"; (internal quotation marks omitted) id., 352, quoting *State* v. *Jones*, supra, 132 Conn. 685; makes clear that the court in *Paradise* was holding that a criminal statute's language, not merely its legislative history, must necessitate a retrospective construction in order for one to be given. The court noted in *Paradise* that the rationale behind its holding was "grounded in the principle that criminal statutes must be strictly construed." *State* v. *Paradise*, supra, 189 Conn. 352.

We agree with the defendant that *Paradise* created a bright line rule on "matters involving the statutory construction of criminal statutes"; id., 353 n.5; namely, that the language of the statute itself must clearly necessitate a retrospective construction for one to be given. However, the breadth of the holding in *Paradise*, and, therefore, its application to this case, is limited in two important ways.

First, the court expressly noted in *Paradise* that its holding that "criminal statutes are not to be accorded retrospective effect absent language clearly necessitating such a construction"; id., 353; was limited. The court wrote: "The civil-criminal distinction enunciated in *Jones* and affirmed herein, is not necessarily applicable to other areas of the criminal process. Our holding [in *Paradise*] extends solely to matters involving the statutory construction of criminal statutes." Id., 353 n.5.

Second, this court's subsequent decision in *In re Daniel H.*, 237 Conn. 364, 678 A.2d 462 (1996), made clear that there are instances in which neither *Paradise* nor *Jones* prevents this court from considering the legislative history of a criminal statute in determining whether such a statute should be applied retroactively. In *In re Daniel H.*, we determined whether a statutory amendment eliminating the right to an immediate appeal from an order transferring a juvenile matter to the regular criminal docket applied retroactively. Id., 366–67. While we specifically held that the statutory amendment at issue was a criminal statute that affected substantive rights; see generally id., 373–76; we, nonetheless, looked to its legislative history to determine whether the amendment should be applied retroactively. Id., 376. Thus, we did not limit our analysis to a determination of whether the language of the amendment clearly necessitated a retrospective application, but, rather, used the normal tools of statutory construction to determine the legislature's intent on the issue of retroactive application of the amendment.

Thus, we agree with the defendant that *Paradise* stands for the proposition that, for certain types of criminal statutes, such as a statute of limitations for the prosecution of a crime, the language of the statute must "clearly necessitat[e]"; *State* v. *Paradise*, supra, 189 Conn. 353; a retrospective application in order for one to be given.[6] We agree with the state, however, that

---

[6] In 1994, this court reaffirmed the rationale of *Paradise* in *State* v. *Crowell*, 228 Conn. 393, 636 A.2d 804 (1994), in which we again considered whether a statute of limitations could be applied to an offense committed prior to the statute's effective date. Id., 394–95. We noted in *Crowell* that the court in *Paradise* had considered "the identical issue"; id., 397; and we cited to *Paradise* for the proposition that "criminal statutes [of limitations] are not to be accorded retrospective effect absent language clearly necessitating such a construction . . . ." (Internal quotation marks omitted.) Id., 401. Thus, we do not believe that the court in *Crowell* intended to weaken this component of *Paradise* when it implied that the legislative history of a criminal statute of limitations might be relevant to a determination of its retroactivity. See id. ("[t]he state cannot point to anything in the language

footnote 5 of *Paradise* and the holding in *In re Daniel H.* make clear that statutes affecting "other areas of the criminal process"; *State* v. *Paradise*, supra, 353 n.5; may be given retrospective effect if the legislative history evinces a clear and unequivocal intent for such a retrospective application. Id.; see *In re Daniel H.*, supra, 237 Conn. 376 (holding that substantive criminal statute could not be applied retrospectively because there was "nothing . . . in the language or the legislative history" that was "a clear and unequivocal expression of legislative intent" to rebut presumption of prospective application only).

Our task, then, is to determine whether P.A. 97-256, § 6, covers one of those "other areas of the criminal process"; *State* v. *Paradise*, supra, 353 n.5; to which the holding of *Paradise* does not extend. We hold that, for reasons discussed hereinafter, this case is governed by the method of statutory interpretation employed by this court in *In re Daniel H.* See generally *In re Daniel H.*, supra, 237 Conn. 376.

Public Act 97-256, § 6, affects an area of the criminal process far removed from the actual criminal conduct for which the defendant originally was charged. For example, P.A. 97-256, § 6, does not change the elements of the crime with which the defendant was charged, alter the elements of his defense to that crime or make more burdensome the punishment for that crime, after its commission.[7] Unlike that in *Paradise* or *State* v.

of the statute *or in its legislative history* that expresses such an intent" [emphasis added]).

[7] Therefore, P.A. 97-256, § 6, does not violate the ex post facto clause of the United States constitution. U.S. Const., art. I, § 10, cl. 1 ("[n]o State shall . . . pass any . . . ex post facto Law"); see, e.g., *Lynce* v. *Mathis*, 519 U.S. 433, 441, 117 S. Ct. 891, 137 L. Ed. 2d 63 (1997) ("[t]o fall within the *ex post facto* prohibition, a law must be retrospective—that is, it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime" [citation omitted; emphasis in original; internal quotation marks omitted]). Public Act 97-256, § 6, does nothing to alter the definition of the criminal conduct for which the defendant

*Crowell*, 228 Conn. 393, 636 A.2d 804 (1994); see footnote 6 of this opinion; the legislation at issue in this case does not affect the period of time within which the defendant was susceptible to prosecution for his conduct. Therefore, the proper test for determining whether P.A. 97-256, § 6, should be applied retroactively is whether the language of P.A. 97-256, § 6, or its legislative history, indicates that the legislature clearly and unequivocally intended for the statute to apply retroactively. See *In re Daniel H.*, supra, 237 Conn. 376.

## III

## APPLICATION OF STATUTORY INTERPRETATION

Although we have determined that we are not limited solely to the language of P.A. 97-256, § 6, in determining whether it should be applied retroactively, we, nevertheless, begin our search for the legislature's intent by examining the words of the statute itself. E.g., *Peabody N.E., Inc.* v. *Dept. of Transportation*, 250 Conn. 105, 122, 735 A.2d 782 (1999). Section 6 of P.A. 97-256 provides in relevant part: "(a) The court shall not accept a plea of guilty or nolo contendere from any defendant in any criminal proceeding unless the court advises him of the following: 'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the

was charged, nor does it impose a "a greater punishment, than the law annexed to the crime, when committed." (Internal quotation marks omitted.) *Lynce* v. *Mathis*, supra, 441; see also *California Dept. of Corrections* v. *Morales*, 514 U.S. 499, 506–507 n.3, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995) ("the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of disadvantage . . . but on whether any such change . . . increases the penalty by which a crime is punishable" [emphasis in original; internal quotation marks omitted]); *Beasley* v. *Commissioner of Correction*, 50 Conn. App. 421, 432–33, 718 A.2d 487 (1998), aff'd, 249 Conn. 499, 733 A.2d 833 (1999) ("[t]he final step in an ex post facto analysis is to determine whether the effect of the newly enacted law increases the amount of the punishment imposed for the crime's commission").

consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.' . . .

"(c) If the court fails to advise a defendant as required in subsection (a) of this section and the defendant not later than three years after the acceptance of the plea shows that his plea and conviction may have one of the enumerated consequences, the court, on the defendant's motion, shall vacate the judgment, and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty."

As the state concedes, P.A. 97-256, § 6, on its face, is ambiguous with respect to whether it is to be applied retroactively. The legislative history surrounding the enactment of P.A. 97-256, § 6, however, clearly and unequivocally demonstrates a legislative intent to apply this statute of limitations retroactively.[8]

The strongest evidence of such intent came during a debate over the bill that later became P.A. 97-256, § 6, on the floor of the House of Representatives, in which one legislator expressed his concerns over possible retroactive application to one of the bill's sponsors. Representative Robert Farr stated: "I guess to Representative [Michael P.] Lawlor, my understanding of what's going on out there now is that the Immigration and Naturalization Service is now going through records and finding people *who have been convicted years ago* and starting to deport them. I guess my concern with this language would be that somebody who might have pleaded guilty to a drug type of situation, in many cases not knowing

---

[8] Therefore, we need not decide whether the statute is substantive or procedural. Even substantive criminal statutes may be applied retroactively when there is "a clear and unequivocal expression of legislative intent"; *In re Daniel H.*, supra, 237 Conn. 376; for such application, and the statute does not violate the ex post facto clause of the United States constitution. See footnote 7 of this opinion.

the consequences, it might have been a simple possession of marijuana. It might have been some other charge for which they did not understand the consequences, *it might have been ten years ago.* If the [Immigration and Naturalization Service] now picks that up, and they didn't understand the consequences, I am not sure why we want to say that [if] they weren't informed, that they only have three years.

"Through you, Mr. Speaker to Representative Lawlor, I am not sure why justice would suggest that we ought to be doing this." (Emphasis added.) 40 H.R. Proc., Pt. 13, 1997 Sess., pp. 4700–4701.

Thus, Representative Farr clearly contemplated that the proposed amendment to § 54-1j would apply retroactively, and expressed his concern over such application. In response, Representative Lawlor did not dispute that the proposed amendment would apply retroactively. Rather, he noted that there was a practical reason for such retroactive application: "[A]pparently a practical problem that has cropped up is that in some courts it's been difficult to obtain the records of exactly *what happened years and years ago,* whether or not defendants were in fact advised and *this would eliminate that problem.*" (Emphasis added.) Id., p. 4701.

Clearly, Representative Lawlor also envisioned that the proposed amendment would have retroactive effect. Otherwise, the statute would not "eliminate [the] problem" of potentially improper plea canvasses in cases that happened "years and years ago." Id. Thus, one of the express purposes of P.A. 97-256, § 6, necessitates retrospective application. Because "[i]t is well settled that statutory construction involves a reasoned search for the legislature's intent . . . including the purpose and policies behind [the statute's] enactment"; *Hartford Electric Supply Co.* v. *Allen-Bradley Co.*, 250 Conn. 334,

346, 736 A.2d 824 (1999); our conclusion that P.A. 97-256, § 6, should be given retroactive effect is further supported.

Representative Lawlor also pointed out that the "language [of the proposed amendment to § 54-1j] would not prohibit a court from re-opening a case and allowing a person to essentially re-negotiate [his or her] plea agreement. This simply modifies language which requires a court to do so. . . .

"So . . . in the event that there were a compelling case, nothing that we are doing here today would prohibit a court from reconsidering it. We are just eliminating—we are limiting the mandatory re-opening to a window of three years." 40 H.R. Proc., supra, p. 4701.[9]

Representative Farr responded: "I'll take Representative Lawlor's representation that the court would still have the power to re-open these cases and withdraw any objection." Id., pp. 4701–4702.

Thus, on the floor of the House of Representatives, two representatives clearly and unequivocally stated that they understood that the proposed amendment to § 54-1j would apply retroactively. Furthermore, the value of these statements in determining the intent of the legislature is heightened by the fact that this understanding that the law would apply retroactively came both from a representative who expressed concerns over the bill and one of the bill's sponsors. See *Haroco, Inc.* v. *American National Bank & Trust Co. of Chicago,* 747 F.2d 384, 390 (7th Cir. 1984), aff'd, 473 U.S. 606, 105 S. Ct. 3291, 87 L. Ed. 2d 437 (1985) (fact that both supporters and opponents of bill interpreted proposed legislation similarly is indication of legislative intent); 2A J. Sutherland, Statutory Construction (5th

---

[9] This case, however, does not present us with the issue of whether the trial court abused its discretion by refusing to reopen the defendant's case.

Ed. Singer 1992) § 48.13, p. 356 ("federal courts hold that statements by any members during legislative debates may be considered in the interpretation of a statute where they show a common agreement in the legislature about the meaning of an ambiguous provision"); cf. *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 395–97, 709 A.2d 1116 (1998) (statements by bill's sponsor made legislative intent clear).

In addition to this exchange, Representative Lawlor, in urging the bill's passage, noted that the bill "would close a wide loop hole available to convicted offenders in order to obtain a new trial" by responding to the growing problem of defendants seeking to withdraw their pleas many years after they had been entered. 40 H.R. Proc., supra, pp. 4699–4700. Representative Lawlor also noted that the bill "eliminates a problem that was cropping up on the appellate level in certain cases"; id., p. 4698; and that the bill was "suggested in the aftermath of several cases where there was an unfortunate result in a pending criminal case." Id., p. 4699.

These statements strengthen the conclusion that the legislature intended P.A. 97-256, § 6, to apply retroactively so as to close what legislators perceived as a "wide loop hole"; id., p. 4700; and eliminate "unfortunate result[s]." Id., p. 4699. Any interpretation that applies the statute only prospectively would allow this wide loophole to continue in spite of the legislators' understanding that the bill would apply to defendants who were "convicted years ago . . . [even] ten years ago"; id., p. 4700, remarks of Representative Farr; on the basis of plea canvasses that happened "years and years ago." Id., p. 4701, remarks of Representative Lawlor. We decline to interpret the statute so as to lead

to this bizarre and unintended result. See, e.g., *State* v. *DeFrancesco*, 235 Conn. 426, 437, 668 A.2d 348 (1995).

The judgment is affirmed.

In this opinion MCDONALD, C. J., and NORCOTT and KATZ, Js., concurred.

BERDON, J., dissenting. The majority, contrary to our established principles of law, applies retroactively a legislative enactment, Public Acts 1997, No. 97-256, § 6 (1997 amendment), which limits the time in which a judgment may be vacated and a defendant be allowed to withdraw a plea.

In *State* v. *Paradise*, 189 Conn. 346, 352, 456 A.2d 305 (1983), this court put the legislature on notice that we had reaffirmed the bright line rule enunciated in *State* v. *Jones*, 132 Conn. 682, 685, 47 A.2d 185 (1946), that "in a criminal case a retrospective construction of a statute should not be adopted unless its language clearly makes such a construction necessary." (Internal quotation marks omitted.) In addition to the constitutional implications of such ex post facto laws,[1] the prospective statutory construction rule is grounded in this court's long-standing principles "that criminal statutes must be strictly construed . . . [and] must be liberally construed in favor of the accused." (Citations omitted.)

---

[1] Justice Norcott cogently set forth in *In re Daniel H.*, 237 Conn. 364, 376 n.10, 678 A.2d 462 (1996): "Our conclusion that [the 1994 amendment, which eliminated the right to an immediate appeal from a court order transferring a juvenile matter to the regular criminal docket of the Superior Court (1994 amendment)] applies prospectively only is also supported by the canon of statutory construction that instructs us to read statutes to avoid, rather than to create, constitutional questions. *In re Valerie D.*, 223 Conn. 492, 534, 613 A.2d 748 (1992). In the present case, a retroactive application of the 1994 amendment would raise significant concerns about the amendment's constitutionality insofar as it arguably makes the punishment for a crime more burdensome after its commission and, therefore, might be found to be an ex post facto law under *Collins* v. *Youngblood*, 497 U.S. 37, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990)."

*State* v. *Paradise*, supra, 352. Indeed, the majority ignores the fact that not long after *Jones* was decided by this court, the legislature enacted General Statutes § 55-3, which provides: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be *construed* to have a retrospective effect." (Emphasis added.)

Furthermore, the majority opinion is bewildering. It hangs its hat on footnote 5 of *Paradise*, which provides: "The civil-criminal distinction enunciated in *Jones* and affirmed herein, is not necessarily applicable to other areas of the criminal process. Our holding [of prospective application] extends solely to matters involving the statutory construction of criminal statutes." *State* v. *Paradise*, supra, 189 Conn. 353 n.5. That is precisely what we have here—a question of statutory construction of whether the legislature intended that the 1997 amendment have retroactive application.

In *Jones* and *Paradise*, the court did not reference the legislative history of the amendments in question, but, rather, concluded that the statutory language must clearly indicate that it is to be retroactively applied. See *State* v. *Paradise*, supra, 189 Conn. 352; *State* v. *Jones*, supra, 132 Conn. 685. The majority in the present case relies on our decision in *In re Daniel H.*, 237 Conn. 364, 678 A.2d 462 (1996). But *In re Daniel H.* made clear the following: "In criminal cases, to determine whether a change in the law applies to a defendant, we generally have applied the law in existence on the date of the offense, regardless of its procedural or substantive nature. See, e.g., *State* v. *Ross*, 230 Conn. 183, 283, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995) (relying on date of offense in retroactivity analysis of change in law ultimately found to be procedural); *State* v. *Jones*,

[supra, 132 Conn. 684–85] (application of statute requiring court in certain pending cases to order examination of defendant for venereal disease, enacted after date of offense but prior to arrest, would impermissibly give it retroactive effect); see also *State* v. *Millhouse*, 3 Conn. App. 497, 501, 490 A.2d 517 (1985) (in construing penal statute to determine whether application is retroactive, date of crime controls). In fact, we recently have rejected an argument analogous to the argument made by the state in the present case. See *State* v. *Crowell*, 228 Conn. 393, 636 A.2d 804 (1994). In *Crowell*, the state had contended that to apply a revised statute of limitations, which the legislature had extended from five years to seven years, to a defendant who allegedly had committed a child sexual abuse offense less than five years prior to the revision, would not constitute a retroactive application. Id., 398. Specifically, the state had argued that, although the change had been made after the date of the offense, it had occurred prior to the expiration of the original five year period and, therefore, the defendant's right to a statute of limitations defense had never vested. Id. We rejected this approach and, relying on the date on which the offense was committed, concluded that to apply the seven year statute of limitations to the defendant would constitute a retroactive application of the law. Id., 401. Similarly, in the present case, to determine whether applying the 1994 amendment to the respondents would constitute retroactive application of the amendment, we look to the law in effect on the date of their alleged offenses. We conclude that to apply the 1994 amendment to the respondents would constitute a retroactive application. Accordingly, we conclude that the 1994 amendment does not apply to juveniles charged with crimes that occurred prior to its effective date." *In re Daniel H.*, supra, 377–78. Additionally, this court previously has held that "[w]e presume that the legislature is aware of the judicial

construction placed upon its enactments. . . . *State* v. *Paradise*, supra, [352] put the legislature on notice that if it intends that a criminal statute of limitations should apply retrospectively, it must make that intent clear." (Citations omitted.) *State* v. *Crowell*, supra, 401.

I must concede that the opinions in *In re Daniel H.*, supra, 237 Conn. 364, and *State* v. *Crowell*, supra, 228 Conn. 393, included references to "legislative history." In neither case, however, did the analysis of the court turn on an interpretation of the legislative history, but, rather, depended on the express language of the statutory enactment. Nevertheless, even if the vague legislative history is to be considered in this case, it could not pass the clear intention requirement of *Jones, Paradise, Crowell* and *In re Daniel H.*[2] Not one legislator expressed the view that the limitation period at issue in this case was intended to have retroactive effect. The majority's disingenuous construction lifts phrases such as "convicted years ago" or "ten years ago" from

[2] *Paradise, Crowell* and *In re Daniel H.*, have their roots firmly planted in *Jones*, wherein this court stated: "The application of [the amended statute] in this case would give it a retrospective effect. The court's refusal to apply the act was correct. There is nothing in this legislation which indicates any intent on the part of the legislature to give it such operation, and an act is never given retrospective effect unless its terms absolutely require it. *Bridgeport* v. *Greenwich*, 116 Conn. 537, 543, 165 [A.] 797 [1933]. In *Bryant* v. *Hackett*, 118 Conn. 233, 238, 171 [A.] 664 [1934], we said that a law will not be given retrospective effect unless the legislature has manifested that intent 'by very plain and explicit words.' In *Massa* v. *Nastri*, 125 Conn. 144, 146, 3 [A.2d] 839 [1939], we said that laws are to be interpreted as operating prospectively and considered as furnishing a rule for future cases only, 'unless they contain language unequivocally and certainly embracing past transactions.' It is true that the cases cited above are civil cases. There are apparently few criminal cases where the rule has been applied, probably because they usually turn on the claim that a statute, if applied retrospectively, would be invalid as an ex post facto law. In Crawford, Statutory Construction, p. 573, it is said that in a criminal case a retrospective construction of a statute should not be adopted 'unless its language clearly makes such a construction necessary.' See also [59 C.J. 1173, Statutes § 698 (1932)]." *State* v. *Jones*, supra, 132 Conn. 684–85.

the legislative history and places them in a contrived context to support its conclusion. Not one exchange among the legislators, however, when contextually examined, offers even a glimmer of support for the proposition that the legislature clearly intended that the 1997 amendment was to apply retrospectively. The legislative history indicates only that the general purpose of the amendment was clear—to close an apparent loophole in the statute. That history does not indicate the legislature clearly intended the amendment was to apply retroactively.

Therefore, I can conclude only that the majority's opinion is result oriented.

Accordingly, I dissent.