STATE OF CONNECTICUT *v.* HORACE NOWELL
(SC 16798)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued January 8—officially released March 18, 2003

*David I. Channing*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's

attorney, and *Amy Sedensky*, assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The defendant, Horace Nowell, was charged with one count of sale of narcotics in violation of General Statutes § 21a-278 (a)[1] and one count of possession of narcotics within 1500 feet of a school in violation of General Statutes (Rev. to 1999) § 21a-279 (d).[2] He

---

[1] General Statutes § 21a-278 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person one or more preparations, compounds, mixtures or substances containing an aggregate weight of one ounce or more of heroin, methadone or cocaine or an aggregate weight of one-half gram or more of cocaine in a free-base form or a substance containing five milligrams or more of lysergic acid diethylamide, except as authorized in this chapter, and who is not, at the time of such action, a drug-dependent person, shall be imprisoned for a minimum term of not less than five years nor more than twenty years; and, a maximum term of life imprisonment. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years, or (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

A very minor technical change was made to § 21a-278 (a) in 2001. See Public Acts 2001, No. 01-195 (relocation of one comma). Because, in all other respects, that subsection has remained unchanged, for purposes of clarity, we refer herein to the current revision of the statute.

[2] General Statutes (Rev. to 1999) § 21a-279 provides in relevant part: "(a) Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned.

"(b) Any person who possesses or has under his control any quantity of a hallucinogenic substance other than marijuana or four ounces or more of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than five years or be fined not more than two thousand dollars or be both fined and imprisoned, and for

thereafter filed a motion to suppress certain evidence and statements he had made to the police. Following the trial court's denial of that motion, the defendant, pursuant to General Statutes (Rev. to 1999) § 54-94a,[3] entered a conditional plea of nolo contendere to one count of sale of narcotics[4] in violation of § 21a-278 (a), reserving the right to appeal the trial court's denial of

a subsequent offense may be imprisoned not more than ten years or be fined not more than five thousand dollars or be both fined and imprisoned.

"(c) Any person who possesses or has under his control any quantity of any controlled substance other than a narcotic substance, or a hallucinogenic substance other than marijuana or who possesses or has under his control less than four ounces of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be fined not more than one thousand dollars or be imprisoned not more than one year, or be both fined and imprisoned; and for a subsequent offense, may be fined not more than three thousand dollars or be imprisoned not more than five years, or be both fined and imprisoned.

"(d) Any person who violates subsection (a), (b) or (c) of this section in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school and who is not enrolled as a student in such school or a licensed child day care center, as defined in section 19a-77, that is identified as a child day care center by a sign posted in a conspicuous place shall be imprisoned for a term of two years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of subsection (a), (b) or (c) of this section. . . ."

[3] General Statutes (Rev. to 1999) § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[4] The record in this case is unclear as to whether the defendant pleaded nolo contendere to the crime of sale of narcotics or possession of narcotics with intent to sell, both of which are governed by § 21a-278 (a). See footnote 1 of this opinion. In reliance on the judgment file, we refer herein to the defendant's conviction of sale of narcotics.

his motion to suppress. The court accepted the plea and entered a finding of guilty. Prior to sentencing, the defendant filed a motion requesting the trial court to apply Public Acts 2001, No. 01-99 (P.A. 01-99),[5] which permits the court to depart from the mandatory minimum five year sentence prescribed under § 21a-278 (a), and to impose a suspended sentence. The trial court determined that P.A. 01-99 could not be applied to the defendant and accordingly sentenced him to five years incarceration. The defendant appealed[6] from the trial court's judgment, claiming that the trial court improperly had: (1) denied his motion to suppress; and (2) concluded that it could not sentence the defendant in accordance with P.A. 01-99. We affirm the judgment of the trial court.

I

We first address the defendant's claim that the trial court improperly denied his motion to suppress evi-

[5] Public Acts 2001, No. 01-99, provides: "Section 1. (NEW) Notwithstanding any provision of the general statutes, when sentencing a person convicted of a violation of any provision of chapter 420b of the general statutes, except a violation of subsection (a) or (c) of section 21a-278a of the general statutes, for which there is a mandatory minimum sentence, which did not involve the use, attempted use or threatened use of physical force against another person or result in the physical injury or serious physical injury of another person, and in the commission of which such person neither was armed with nor threatened the use of or displayed or represented by word or conduct that such person possessed any firearm, deadly weapon or dangerous instrument, as those terms are defined in section 53a-3 of the general statutes, the court may, upon a showing of good cause by the defendant, depart from the prescribed mandatory minimum sentence, provided the provisions of this section have not previously been invoked on the defendant's behalf and the court, at the time of sentencing, states in open court the reasons for imposing the particular sentence and the specific reason for imposing a sentence that departs from the prescribed mandatory minimum sentence.

"Sec. 2. This act shall take effect July 1, 2001."

[6] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

dence seized from the defendant's person, his automobile and his home, as well as statements made by the defendant to the police. In its memorandum of decision denying the defendant's motion to suppress, the trial court found the following facts, which are relevant to our resolution of this claim. On January 18, 2000, an anonymous telephone call was made to the Waterbury police department describing a man, identified by name as the defendant, selling narcotics in the area of Burton, Bishop and Elizabeth Streets. According to the detective who had received the telephone call, Nicholas DeMatteis, a veteran of the Waterbury police department with more than thirty years experience, the informant identified the type of car the defendant was driving and indicated that the narcotics for sale were in a napkin in the vehicle. DeMatteis went to the identified area, which was known to him for "street level drug activities," and spotted the defendant and a vehicle that matched the description he had been given by the informant. Using binoculars, he observed the defendant as he provided drugs to two unknown individuals, first a black female and thereafter a Hispanic male. DeMatteis then notified other officers who took over the investigation.

Robert Jones, a Waterbury police department narcotics officer, received DeMatteis' report and proceeded, along with another narcotics officer, Lawrence Smith,[7] to the area in question where they located the defendant's vehicle. The officers approached the vehicle from opposite sides, and Jones observed a white napkin containing what he recognized to be packaged crack cocaine on the front passenger seat. He seized the drugs, while Smith opened the driver side door to arrest and

[7] Although the trial court, in its memorandum of decision, referred solely to Jones by name, the record clearly reflects that Smith accompanied Jones to the scene, and that Smith was the one who arrested the defendant and searched him incident to the arrest.

search the defendant. The officers recovered thirty-five bags of crack cocaine and $2229 from the defendant's person.[8] Thereafter, the defendant was transported to the Waterbury police station.

According to both Jones and DeMatteis, the defendant, who spoke English and was not under the influence of drugs or alcohol, was advised of his *Miranda* rights,[9] which he waived. During the course of the ensuing interview, the defendant revealed that there was more contraband in his home. He then willingly signed a form providing the police with consent to search his residence. With a key in their possession that the defendant had provided, the police proceeded to the defendant's home where they found and seized four grams of narcotics, more than $3000 in cash and a shotgun.

The trial court noted as immaterial the testimony of three of the defendant's witnesses, specifically, two police officers who provided additional background information regarding the incident and an investigator for the public defender's office. The court expressly rejected as incredible the defendant's testimony and the testimony of a convicted felon, Todd Ferguson, refuting the state's evidence regarding the search, the two drug transactions, the defendant's waiver of his *Miranda* rights and the consent to search.

On the basis of the facts it had found, the trial court determined that the police "at the *very least* had reasonable articulable suspicion to conduct an investigation of [the defendant's] car. The state presented evidence beyond that standard and actually satisfied the probable cause test. . . . Once the original investigating officer

---

[8] Jones testified that thirty-nine bags of crack cocaine were recovered from the seat of the defendant's car.

[9] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

corroborated the initial anonymous tip with two separate observations of what he knew to be street sales of narcotics, probable cause to either search or arrest the defendant was present. The additional plain view observations of Jones merely added to the more than sufficient justification for the actions of the officers.

"The items taken subsequent to the arrest of [the defendant] were legally seized. Police officers can lawfully search an individual after a lawful custodial arrest. . . .

"The testimony of the officers supports the court's finding that the defendant knowingly, intelligently and voluntarily waived his right to remain silent. The defendant was read his rights, he understood his rights, the defendant cooperated, he was not under the influence of drugs or alcohol, there were no threats or promises. The defendant's waiver of his rights was valid.

"The defendant's consent to search his home was his free choice. The court finds that the consent form was explained to the defendant, the defendant responded in an appropriate and cooperative fashion. Once again, the defendant was not confused; there were no threats or promises. The totality of the circumstances leads the court to conclude that the defendant freely consented to the search of his home." (Citations omitted; emphasis in original.) Accordingly, the trial court denied the defendant's motion to suppress.

## A

The defendant raises both factual and legal challenges to the trial court's denial of his motion to suppress. The defendant first claims that the trial court improperly credited the testimony of the police witnesses called by the state, rather than the testimony of the defendant and his witness. Next, predicated on his first contention, the defendant claims that the trial court

improperly denied his motion to suppress regarding: (1) the search of the defendant's person, because police lacked probable cause; (2) the search of the defendant's apartment, because his consent to search was not knowing and voluntary; and (3) the defendant's statements at the police station and the evidence seized from his home, because they were fruits of the prior unlawful arrest and search. We reject the defendant's claims.

As a threshold matter, we set forth the appropriate standard pursuant to which we review a challenge to a trial court's decision regarding a suppression motion. "This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. That is the standard and scope of this court's judicial review of decisions of the trial court. Beyond that, we will not go. . . . In other words, to the extent that the trial court has made findings of fact, our review is limited to deciding whether those findings were clearly erroneous. Where, however, the trial court has drawn conclusions of law, our review is plenary, and we must decide whether those conclusions are legally and logically correct in light of the findings of fact." (Citations omitted; internal quotation marks omitted.) *State* v. *Velasco*, 248 Conn. 183, 188–89, 728 A.2d 493 (1999).

In the present case, the defendant claims that "it was clearly erroneous for the trial court to credit the testimony of the police." Specifically, he asserts that contradictions in the testimony of the three officers testifying for the state regarding their location during

the incident leading to his arrest should have led the trial court to conclude that DeMatteis had not observed the defendant engaged in the drug transactions that had precipitated the search. Additionally, the defendant contends that the testimony that he and Ferguson provided was the more credible evidence and that, if the trial court properly had credited this evidence, it would have granted his motion to suppress.

Because a trial court's determination of the validity of a search implicates a defendant's constitutional rights, we generally engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. See *State* v. *Greenfield*, 228 Conn. 62, 68–69, 634 A.2d 879 (1993); *State* v. *Damon*, 214 Conn. 146, 154, 570 A.2d 700, cert. denied, 498 U.S. 819, 111 S. Ct. 65, 112 L. Ed. 2d 40 (1990); *State* v. *Northrop*, 213 Conn. 405, 414, 568 A.2d 439 (1990). In this case, however, the defendant is not claiming that the court did not have substantial evidence upon which to base its decision, but, rather, that the evidence it had was not to be credited. Accordingly, we need not recite the facts relied upon by the defendant to advance his argument, because this claim distills to a credibility contest that we leave to the trier of fact to judge.

"The determination of a witness' credibility is the special function of the trial court. This court cannot sift and weigh evidence." (Internal quotation marks omitted.) *State* v. *Trine*, 236 Conn. 216, 227, 673 A.2d 1098 (1996). Otherwise, "[t]his court would then, by way of fact-finding, be required to adjudicate the validity and the reliability of that evidence. At this stage of the proceedings, we are incapable of making those necessary determinations. In general, [i]t is the function of the trial court, not this court, to find facts. . . . Imposing a fact-finding function on this court, therefore, would be contrary to generally established law. Indeed, it would be inconsistent with the entire process of trial fact-

finding for an appellate court to do so." (Citation omitted; internal quotation marks omitted.) *State* v. *Tate*, 256 Conn. 262, 287–88 n.17, 773 A.2d 308 (2001). Thus, viewed through this prism, the testimony was for the trial court to assess and we have no appropriate role at this level in determining which of the various witnesses to credit.

## B

We next examine the defendant's suppression claims regarding the legal determinations by the trial court, over which we exercise plenary review. *State* v. *Velasco*, supra, 248 Conn. 189. Specifically, the defendant challenges the trial court's determinations regarding the admissibility of evidence obtained through: (1) the search of the defendant's person; (2) the search of the defendant's automobile; (3) the search of the defendant's apartment; and (4) the defendant's statements following his arrest. Because the first two categories stem from the defendant's contention that his arrest was unlawful, we address those claims together. Similarly, because the third and fourth categories stem from the defendant's contention that the statements and consent to search resulted from an unknowing and involuntary waiver of his *Miranda* rights, we address those claims in tandem.

## 1

We begin with a brief discussion of the legal principles relevant to the warrantless arrest and concomitant search of the defendant's person and his automobile. "Under both the federal and the state constitutions, a warrantless search and seizure is per se unreasonable, subject to a few well defined exceptions. *Katz* v. *United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *State* v. *Miller*, 227 Conn. 363, 383, 630 A.2d 1315 (1993) . . . . One of those exceptions is a search incident to a lawful arrest. It is an established rule that

a properly conducted warrantless search incident to a lawful arrest is itself lawful. . . . Thus, if the defendant's arrest was lawful, the subsequent warrantless search of his person also was lawful." (Citations omitted.) *State* v. *Velasco*, supra, 248 Conn. 189. Moreover, "when police make a lawful custodial arrest of an occupant of an automobile, and the arrestee is detained at the scene, police may contemporaneously search without a warrant the interior passenger compartment of the automobile. . . . The passenger compartment encompasses all space reachable without exiting the vehicle." (Citations omitted; internal quotation marks omitted.) *State* v. *Delossantos*, 211 Conn. 258, 266–67, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989).

General Statutes § 54-1f (b) authorizes a police officer to conduct a warrantless arrest of "any person who the officer has reasonable grounds to believe has committed or is committing a felony." The phrase "reasonable grounds to believe" is synonymous with probable cause. *State* v. *Trine*, supra, 236 Conn. 236 n.16. The determination of whether probable cause exists under the fourth amendment to the federal constitution, and under article first, § 7, of our state constitution, is made pursuant to a "totality-of-the-circumstances" test. *Illinois* v. *Gates*, 462 U.S. 213, 238–39, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *State* v. *Barton*, 219 Conn. 529, 544, 594 A.2d 917 (1991). "Probable cause exists when the facts and circumstances within the knowledge of the officer and of which [the officer] has reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution to believe that a felony has been committed." (Internal quotation marks omitted.) *State* v. *Trine*, supra, 236–37.

In the present case, the trial court first determined that "the police at the very least had reasonable articulable suspicion to conduct an investigation of [the defen-

dant's] car."[10] Thereafter, the court concluded that the state's evidence went "beyond that standard and actually satisfied the probable cause test. . . . Once the original investigating officer corroborated the initial anonymous tip with two separate observations of what he knew to be street sales of narcotics, probable cause to either search or arrest the defendant was present." (Citation omitted.) Finally, the court referred to "[t]he additional plain view observations of Jones [that] merely added to the more than sufficient justification for the actions of the officers."

The defendant does not claim that the facts, if credited, fail to support the trial court's determination of probable cause to arrest and search him. Rather, he contends that the trial court should not have credited the testimony of the three police officers testifying for the state. Once again, we abide by the principle previously stated that we do not engage in fact-finding. Accordingly, on the basis of the facts that the trial court reasonably found, we conclude that the trial court's determination of probable cause to arrest the defendant was proper and that the search of his person incident to that arrest, resulting in the seizure of $2229 and thirty-five bags of crack cocaine, was therefore lawful. See *State* v. *Velasco*, supra, 248 Conn. 189. Similarly, the simultaneous search of the passenger seat area of the defendant's vehicle incident to his arrest, which resulted in the seizure of thirty-nine bags of crack

[10] The scope of that inquiry is well established. "Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . The police officer's decision . . . must be based on more than a hunch or speculation. . . . In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Internal quotation marks omitted.) *State* v. *Hammond*, 257 Conn. 610, 617, 778 A.2d 108 (2001).

cocaine also was lawful.[11] See *State* v. *Delossantos,*
supra, 211 Conn. 266. Therefore, the trial court properly
denied the defendant's motion with respect to that
evidence.

2

The defendant also challenges the trial court's deter-
minations regarding the search of his apartment, as
well as the statements he made following his arrest.
Specifically, the defendant claims that the trial court
improperly determined that he knowingly and volunta-
rily consented to the search of his home. We reject the
defendant's contention.

"It is . . . well settled that one of the specifically
established exceptions to the requirements of both a
warrant and probable cause is a search [or seizure]
that is conducted pursuant to consent." *Schneckloth* v.
*Bustamonte,* 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed.
2d 854 (1973); see also *State* v. *Reddick,* 189 Conn.
461, 467, 456 A.2d 1191 (1983). Whether a defendant
voluntarily has consented to a search is a question of
fact to be determined by the trial court from the totality
of the circumstances based on the evidence that it
deems credible along with the reasonable inferences
that can be drawn therefrom. *State* v. *Reagan,* 209 Conn.
1, 7–8, 546 A.2d 839 (1988); see also *Poulos* v. *Pfizer,*
244 Conn. 598, 609, 711 A.2d 688 (1998). "Whether there
was valid consent to a search is a factual question that
will not be lightly overturned on appeal." *State* v. *Zar-
ick,* 227 Conn. 207, 226, 630 A.2d 565, cert. denied, 510
U.S. 1025, 114 S. Ct. 637, 126 L. Ed. 2d 595 (1993).

The trial court in the present case credited the testi-
mony of DeMatteis that the defendant spoke English

---

[11] Finally, we note that it is well settled that police officers lawfully
detaining an occupant of a motor vehicle may seize contraband in plain
view and that such observations give rise to probable cause justifying a
search of the vehicle. *State* v. *Longo,* 243 Conn. 732, 740–41, 708 A.2d
1354 (1998).

and that he was not under the influence of alcohol or drugs. In addition, the court determined that no threats or promises had been made and that the consent form had been explained to him before he agreed to the search of his home. Once again, the defendant does not claim that the evidence was not sufficient to support the court's finding, only that the trial court improperly credited the police testimony. Therefore, we do not engage in the fact-finding that the defendant's claim would require in order for him to prevail.

The defendant further claims that the trial court improperly determined that he had waived his *Miranda* rights and therefore the statements he had made at the police station were inadmissible. As with his other claims, the defendant does not assert that the facts as found were insufficient to support the trial court's determination. Rather, he claims that that the trial court should not have credited the police testimony in this regard. The same factors that led the court to conclude that the consent to search was valid also caused the trial court to conclude that the defendant had waived his *Miranda* rights and that any statements he had made properly were admissible. Accordingly, we conclude that the trial court's denial of the defendant's motion to suppress any statements made following his arrest was proper.

Finally, we respond briefly to the defendant's claim that *all* the evidence seized and the statements he gave were the tainted fruits of the initial search at the scene of his arrest. This claim also is predicated on the defendant's assertion that the initial search was illegal. Because we already have concluded that the trial court's legal determinations regarding the initial search legally and logically were correct, no further discussion is necessary. Accordingly, we conclude that the trial court properly denied the defendant's motion to suppress.

## II

The second issue on appeal is whether the trial court properly concluded that P.A. 01-99, which would have allowed the trial judge to deviate from the five year mandatory minimum sentence otherwise required by § 21a-278 (a), did not apply to this case. The following facts are pertinent to our resolution of this issue. The defendant was arrested on January 18, 2000, and charged, inter alia, with a violation of § 21a-278 (a). On August 13, 2001, the court accepted his conditional plea of nolo contendere to that violation in accordance with § 54-94a. Thereafter, the defendant filed an amended sentencing memorandum, as well as a motion for consideration under P.A. 01-99, asking the court to consider sentencing him to a suspended sentence rather than to the mandatory minimum sentence of § 21a-278 (a). At the hearing on the motion, the trial court determined that P.A. 01-99 applied prospectively only, based on the date of the offense, and thereafter, sentenced the defendant to the mandatory minimum sentence pursuant to § 21a-278 (a).

On appeal to this court, the defendant claims that P.A. 01-99 applies to him because it applies to sentences *imposed* after July 1, 2001, the date the act took effect. He claims that the plain language of P.A. 01-99 dictates that result, that the legislative history of the act supports that interpretation and, finally, that, should there be any ambiguity, the rule of lenity favors his construction of the act. The state responds that the trial court properly rejected the defendant's claim. We agree with the state.

We begin with an overview of the pertinent legal principles that guide our resolution of this issue. As the parties recognize, whether P.A. 01-99 applies retroactively is a question of law over which this court has plenary review. See, e.g., *Coley* v. *Camden Associates,*

*Inc.*, 243 Conn. 311, 318, 702 A.2d 1180 (1997). "Whether to apply [an act] retroactively or prospectively depends upon the intent of the legislature . . . . [There is a presumption of] legislative intent that statutes affecting substantive rights shall apply prospectively only. . . . This presumption in favor of prospective applicability, however, may be rebutted when the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively. . . . We generally look to the statutory language and the pertinent legislative history to ascertain whether the legislature intended that the amendment be given retrospective effect." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 819–20, 786 A.2d 1091 (2002).

To determine whether application of a particular act to a criminal defendant would constitute retroactive application, we look to the law in effect on the date the defendant committed his offenses. *In re Daniel H.*, 237 Conn. 364, 378, 678 A.2d 462 (1996); see also *Weaver* v. *Graham*, 450 U.S. 24, 31, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981) (criminal law is retroactive if it "changes the legal consequences of acts completed before its effective date"). In the present case, the offense was committed nearly eighteen months prior to the effective date of P.A. 01-99. There is no language in P.A. 01-99 that compels a retrospective construction; the act merely provides an effective date. See footnote 5 of this opinion. Nor is there anything in the legislative history to indicate that the legislature "clearly and unequivocally" intended for P.A. 01-99 to apply retroactively. *In re Daniel H.*, supra, 376. The legislative history reflects that the purpose of P.A. 01-99 was to relieve prison overcrowding[12] and to give trial judges greater

---

[12] "The purpose of [P.A. 01-99] . . . is to provide some relief from the overcrowded prison conditions that currently exist in the State of Connecticut as well in keeping with that particular objective with respect to mandatory minimum sentences and other situations that judges of the superior court may encounter, there is a trend that many of the players within the

discretion in sentencing.[13] See generally 44 S. Proc., Pt. 7, 2001 Sess., pp. 1879–1929; 44 H.R. Proc., Pt. 11, 2001 Sess., pp. 3463–3556.

Although the defendant points to these salutary purposes as a reason to apply P.A. 01-99 retrospectively, the legislature did not employ any of the language traditionally associated with the expression of such an intent. See *State* v. *Parra*, 251 Conn. 617, 626, 628–29, 741 A.2d 902 (1999). Rather, the act provides that it "shall take effect July 1, 2001." The purpose of this language was to accelerate the effective date of the act from the default date of October 1 otherwise provided for by statute. See General Statutes § 2-32 ("[a]ll public acts, except when otherwise therein specified, shall take effect on the first day of October following the session of the General Assembly at which they are passed"). Had the legislature intended for P.A. 01-99 to apply to criminal defendants whose offenses had been committed prior to the July 1, 2001 date, but who had not yet been sentenced, it could have stated so, either in the act itself or in the legislative debate surrounding its passage. In the absence of any such expression, the trial court properly determined that P.A. 01-99 must be applied prospectively only, that is, to criminal defendants whose offenses were *committed* after July 1, 2001.[14] Accordingly, the trial court properly denied the

criminal justice system are currently subscribing to and that is to return some discretion to the judges in the making of decisions in the criminal court context." 44 S. Proc., Pt. 7, 2001 Sess., p. 1880, remarks of Senator Eric D. Coleman.

[13] "[T]he intent of [P.A. 01-99] is to provide a judge in the sentencing phrase of a criminal trial with the tools he needs to fashion a sentence which is tailored to the precise circumstances in the case before him.

"One of the difficulties with mandatory minimum sentences is that a judge is precluded by virtue of the mandatory minimum from creating a sentence which fits the crime, which is one of the hallmarks of the principles of justice of our system." 44 S. Proc., Pt. 7, 2001 Sess., pp. 1889–90, remarks of Senator William A. Aniskovich.

[14] Because we conclude that the language and the legislative history of P.A. 01-99 clearly indicate an intention that the act apply to defendants

defendant's motion requesting the imposition of a suspended sentence under P.A. 01-99.

The judgment is affirmed.

In this opinion the other justices concurred.

whose offenses were committed after the effective date, the defendant's reliance on the rule of lenity is misplaced. The rule of lenity is applied when, after the court has engaged in the full process of statutory interpretation, there is nonetheless a reasonable doubt about a statute's intended scope. *State* v. *Sostre*, 261 Conn. 111, 120, 802 A.2d 754 (2002); *State* v. *Hinton*, 227 Conn. 301, 317–18, 630 A.2d 593 (1993). After engaging in that process in this case, we are not left with any such doubt.