STATE OF CONNECTICUT *v.* DONNA MARIE LONGO
(SC 15792)

Borden, Katz, Palmer, McDonald and Peters, Js.

Argued December 10, 1997—officially released March 3, 1998

*John R. Day,* certified legal intern, with whom were *Richard Emanuel,* assistant public defender, and, on the brief, *Charles L. Mudd,* certified legal intern, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Eva Lenczewski,* assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The principal issue in this case is whether the police, pursuant to the automobile exception to the warrant requirement under the federal and state constitutions, may, in some circumstances, conduct a warrantless search of a closed container found inside a car. The defendant, Donna Marie Longo, was charged with one count of conspiracy to transport a narcotic substance with intent to sell in violation of General Statutes §§ 53a-48 and 21a-277 (a).[1] Prior to her

---

[1] General Statutes § 53a-48 provides in relevant part: "Conspiracy. Renunciation. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

General Statutes § 21a-277 provides in relevant part: "Penalty for illegal manufacture, distribution, sale, prescription, dispensing. (a) Any person who manufactures, distributes . . . transports with the intent to sell or dispense, possesses with the intent to sell or dispense . . . any controlled substance which is a hallucinogenic substance other than marijuana, or a

trial, she filed a motion to suppress evidence, which the trial court denied. Following a jury trial, the defendant was convicted as charged and sentenced to a term of imprisonment of ten years, execution suspended after five years, followed by three years of probation. The defendant appealed from the judgment of conviction to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We conclude that both the motion to suppress and the evidentiary ruling of the trial court were decided properly, and, therefore, we affirm the judgment of the trial court.

The following evidence was adduced at the hearing on the motion to suppress. On May 6, 1995, Lieutenant Benjamin Pagoni and Trooper Anthony Cretella of the Connecticut state police established an automobile safety check point on Route 69 between New Haven and Waterbury. At approximately 6 p.m., the officers stopped a Honda Civic that was being driven by Thomas Allegrini. They made the stop because Allegrini and Matthew Summa, his front seat passenger, were not wearing seat belts, and because the side windows of the Civic appeared to be tinted beyond the legal limit. When Pagoni approached the driver's side of the car and spoke to Allegrini through the open window, Pagoni smelled the odor of marijuana coming from inside the car. Pagoni then proceeded to the passenger side and asked Summa to roll down his window. From there, Pagoni could see scattered throughout the car numerous green seeds that he believed were marijuana seeds and the burnt ends of several rolled marijuana cigarettes. Pagoni also observed Summa trying to push a large black bag[2] under the front seat with his feet.

narcotic substance . . . shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned . . . ."

[2] The black bag has been referred to as a satchel, pocketbook, purse, briefcase and bag. Throughout this opinion we will refer to it as the black bag.

Pagoni then asked Summa to step out of the vehicle. Once Summa was outside the car, Pagoni saw several more marijuana seeds on the seat where Summa had been sitting. Allegrini told Pagoni that there were no other drugs in the car but that he had smoked some marijuana in the car the night before. The officers asked Allegrini and the defendant, who was in the back seat, to exit the car. At that point, Allegrini was arrested for possession of marijuana.

Pagoni then asked for and received Allegrini's consent to search the car. In conducting the search, he came upon the black bag under the front seat. The defendant told Pagoni that it was her bag and that she did not want it to be searched.[3] Nonetheless, Pagoni searched the bag, and found the following items: credit cards in Michael Greco's name; a credit card in the defendant's name; a driver's license in the defendant's name; a Connecticut state police gun permit in the defendant's name; a handwritten note with directions to a house in New Haven; a price list for various amounts of cocaine; and in a zippered compartment in the back of the bag, a plastic bag containing cocaine.

At the conclusion of the suppression hearing, the trial court made the following findings. On May 6, 1995, the officers established a routine automobile safety check point on the highway. There the officers stopped a vehicle in which the defendant was a passenger for automobile equipment violations. Pagoni, whose training qualified him to recognize the presence of marijuana, smelled marijuana coming from inside the car. He also could see marijuana seeds scattered on the floor of the vehicle and the burnt ends of several rolled marijuana cigarettes in the ash tray. The driver told Pagoni that he had been smoking marijuana in the car the previous night.

---

[3] As the trial court found, the search of the black bag, therefore, was conducted without the defendant's consent.

When the driver and the two other occupants of the vehicle had exited the car, as requested, Pagoni searched the vehicle for marijuana and weapons and found the black bag positioned partly under the front seat. The defendant told Pagoni that the black bag was hers and that she did not want it to be searched. Pagoni did search the black bag, finding the cocaine and other items inside.

At the defendant's trial, the state presented evidence that on May 6, 1995, Summa telephoned Allegrini and asked him for a ride. After Allegrini picked up Summa, Summa received a call on his pager, which displayed the defendant's telephone number. Summa called the defendant and spoke with her husband, Michael Greco. Greco asked if they could give the defendant a ride to New Haven and Allegrini agreed to do so. When Summa and Allegrini arrived at the defendant's residence, the defendant entered the back seat of the car carrying a large black bag.

Following the defendant's directions, Allegrini drove to a residential neighborhood in New Haven and the defendant told Allegrini where to park the car. The defendant left the car carrying her black bag, and returned approximately ten minutes later, still carrying her bag. During the return trip to Waterbury, the defendant asked Summa to put her bag on the floor in front of him, which he did. Thereafter, they were stopped by the officers.

On appeal, the defendant raises two issues: (1) whether the trial court improperly denied her motion to suppress evidence obtained during the search of her bag, under both the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution;[4] and (2) whether the trial court abused

---

[4] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no

its discretion by permitting the state to introduce her gun permit into evidence. We conclude that the motion to suppress was decided correctly, and that the trial court did not abuse its discretion in admitting the gun permit into evidence.

## I

Under both the federal and the state constitutions, the police must first obtain a warrant before conducting a search, unless an exception to the warrant requirement applies. See *Katz* v. *United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (warrant required before every search or seizure, "subject only to a few specifically established and well-delineated exceptions" [internal quotation marks omitted]); *State* v. *Badgett*, 200 Conn. 412, 423, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). We hold that because in this case the police had probable cause to search the automobile under the automobile exception to the warrant requirement, they also could search any containers found in the vehicle that might hold the objects of their search.

## A

The search of the black bag does not violate the United States constitution. This case is controlled by *United States* v. *Ross*, 456 U.S. 798, 825, 102 S. Ct. 2157,

warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The fourth amendment's prohibition against the use of evidence obtained during an illegal search is applicable to the states through the fourteenth amendment to the United States constitution. *Mapp* v. *Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, reh. denied, 368 U.S. 871, 82 S. Ct. 23, 7 L. Ed. 2d 72 (1961).

Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

72 L. Ed. 2d 572 (1982), in which the United States Supreme Court upheld the search of a closed brown paper bag found in the trunk of the defendant's automobile. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." Id. "The scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found." Id., 824.

It is undisputed that Allegrini was lawfully stopped based on traffic violations. Probable cause to search the car arose[5] when Pagoni smelled marijuana and saw marijuana seeds and cigarettes in plain view inside the car.[6] Here, the officers were searching for marijuana and weapons. See *State* v. *Wilkins*, 240 Conn. 489, 509–11, 692 A.2d 1233 (1997) (upholding, for safety reasons, limited weapons search of passenger compartment of lawfully stopped vehicle). In these circumstances, because probable cause existed to search the vehicle and any of its contents that might have concealed contraband, the automobile exception permitted the police to search the defendant's bag. *United States* v. *Ross*, supra, 456 U.S. 798.

---

[5] Although the defendant contested, in her brief, the presence of probable cause, she conceded, at oral argument, that probable cause existed. See *State* v. *Izzo*, 623 A.2d 1277 (Me. 1993) (probable cause to search vehicle existed after discovering marijuana in passenger's waist bag).

[6] It is undisputed that the marijuana was in plain view. Furthermore, the trial court found that "[c]ertainly, based on the facts and circumstances that I heard, and based on the training and experience of the lieutenant, there was probable cause to believe the vehicle contained contraband, specifically marijuana." Other courts have found that the odor of marijuana alone can satisfy the probable cause requirement. See *United States* v. *McSween*, 53 F.3d 684, 686 (5th Cir.), cert. denied, 516 U.S. 874, 116 S. Ct. 199, 133 L. Ed. 2d 133 (1995); *United States* v. *Nicholson*, 17 F.3d 1294, 1297 (10th Cir. 1994); *United States* v. *Reed*, 882 F.2d 147, 149 (5th Cir. 1989); *United States* v. *Haley*, 669 F.2d 201, 203 (4th Cir.), cert. denied, 457 U.S. 1117, 102 S. Ct. 2928, 73 L. Ed. 2d 1329 (1982); *United States* v. *Garcia-Rodriguez*, 558 F.2d

B

The warrantless search was also justified under our interpretation of the warrant requirement of article first, § 7, of the Connecticut constitution. *State* v. *Dukes*, 209 Conn. 98, 547 A.2d 10 (1988). In *Dukes*, a police officer stopped the defendant for speeding. Id., 100. After learning that the defendant's driver's license had been suspended, the officer asked him to get out of the car and arrested him. The officer immediately conducted a search of the defendant's clothing and found a small plastic vial of crack cocaine in his jacket pocket. Id., 101. Afterward, while searching the car for additional contraband, the officer used the defendant's keys to open a " 'heavy plastic security type box' " that was located on the rear seat. Id., 103. Inside the box, the officer discovered a loaded revolver and over ninety vials of a white substance that was later determined to be crack cocaine, cocaine and heroin. Id.

Although the search in *Dukes* could have been justified either as a search incident to the defendant's arrest or under the automobile exception, we held that the "automobile exception permits a warrantless search of an automobile whenever the police have probable cause to do so." Id., 120. We observed that the automobile exception necessarily also permits a search of any containers found in the car, such as a locked box, which might contain the contraband sought in that search. Id., 125–27.

In *State* v. *Leonard*, 14 Conn. App. 134, 136–37, 539 A.2d 1030 (1988), aff'd, 210 Conn. 480, 556 A.2d 611 (1989), the Appellate Court concluded that the police had probable cause to stop the defendant's car, and that the resulting search of the car was proper. The defendant was a passenger in his own car when he and

956, 964 (9th Cir. 1977), cert. denied, 434 U.S. 1050, 98 S. Ct. 900, 54 L. Ed. 2d 802 (1978).

a friend were stopped for speeding. Id., 135. As the police officer approached the car, he noticed that the defendant appeared to be pushing something underneath the front seat. Upon reaching the driver's window, the officer looked in and saw white powder on the driver's jacket and mustache. Id., 135–36. Both men were told to exit the car, and another officer reached into the car and seized the open paper bag that the defendant had been handling. Id. The bag contained a block of hard-packed white powder that was later determined to be cocaine. Id. The Appellate Court concluded that probable cause existed to stop the defendant and his friend on the basis of the traffic violation. Id., 137. Furthermore, the officer's observation of the white powder in plain view gave him probable cause to believe that the car contained contraband, justifying a search of the car and any containers in the vehicle that could have contained such contraband. Id., 139. Therefore, the warrantless search did not violate the defendant's federal or state constitutional protection against unreasonable searches and seizures. Id., 137–39. The Appellate Court's decision was upheld in a per curiam decision by this court.[7] *State* v. *Leonard,* 210 Conn. 480, 556 A.2d 611 (1989).

Consistent with these decisions, the Appellate Court repeatedly has upheld the warrantless searches of closed containers located in automobiles where probable cause existed to search the vehicle. *State* v. *Miller,* 29 Conn. App. 207, 225, 614 A.2d 1229 (1992), aff'd, 227 Conn. 363, 630 A.2d 1315 (1993) ("[o]ur Supreme Court has recognized that article first, § 7, of the Connecticut

---

[7] The defendant's petition for certification to appeal was limited to the following issue: "Did the Appellate Court err in sustaining the conclusion of the trial court at the hearing on the motion to suppress that there was sufficient evidence of probable cause under our federal and state constitutions to justify the police in making a warrantless search of the vehicle in which the defendant was a passenger and in arresting him as a result of that search?" *State* v. *Leonard,* 208 Conn. 807, 545 A.2d 1104 (1988).

constitution contains an automobile exception to its warrant requirement, under which the police may search the passenger compartment of an automobile, including closed containers therein, on the roadside, upon probable cause to believe that they contain the fruits or instrumentalities of a crime"); see *State* v. *Glenn*, 30 Conn. App. 783, 787, 622 A.2d 1024 (1993) (upholding search of black bag found inside vehicle); *State* v. *Quinones*, 21 Conn. App. 506, 509, 574 A.2d 1308, cert. denied, 215 Conn. 816, 576 A.2d 546 (1990) (upholding search of paper bag retrieved from vehicle).

Here, as in *Leonard*, the police had probable cause to search the vehicle. "Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . *and* (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched." (Citations omitted; emphasis in original.) *State* v. *DeChamplain*, 179 Conn. 522, 528–29, 427 A.2d 1338 (1980). We conclude that the traces of marijuana observed in plain view provided probable cause to search the entire vehicle, and any containers, for additional marijuana. Because the black bag was a container which could have held the items that were the object of the search, under our state constitution the police did not have to obtain a warrant before searching it. Accordingly, we conclude that the trial court properly denied the motion to suppress the evidence gathered during the search of the defendant's bag.

## II

We next turn to the defendant's argument that her gun permit should not have been admitted into evidence. She claims that the prejudicial effect of the permit outweighed its probative effect.

A trial court's evidentiary rulings will be overturned on appeal only " 'where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice.' " *State* v. *Alvarez*, 216 Conn. 301, 306, 579 A.2d 515 (1990). Great weight is given to the trial court's decision, and every reasonable presumption is given in favor of its correctness. *State* v. *Beckenbach*, 198 Conn. 43, 47, 501 A.2d 752 (1985).

The defendant argues that the gun permit should not have been admitted into evidence because the state had other evidence to connect her to the black bag. The test is, however, whether the evidence is relevant, not whether it is necessary. *State* v. *Doehrer*, 200 Conn. 642, 649, 513 A.2d 58 (1986) (potentially inflammatory photographs admissible even though not essential). The trial court concluded that the gun permit, in the defendant's name, was relevant to the issue of ownership of the black bag. Ownership of the black bag was relevant to the issue of possession of the drugs found therein. "Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue." *State* v. *Holliman*, 214 Conn. 38, 50, 570 A.2d 680 (1990). "One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable." *State* v. *McClendon*, 199 Conn. 5, 8–9, 505 A.2d 685 (1986). In order to show who possessed the drugs found inside the black bag, the state needed to show who exercised control and dominion over it. See *State* v. *Hill*, 201 Conn. 505, 516, 523 A.2d 1252 (1986). As the trial court observed, "the more things [the state] show[s] connecting [the defendant to the black bag], the more the jury may conclude that she was involved with the drugs contained in [it]."

The defendant argues that the admission of her gun permit was prejudicial because it indicated a criminal propensity. The possession of a gun permit issued by the state police hardly indicates a criminal propensity. The trial court so instructed the jury, telling them it was legal to have a permit and that the permit was offered solely on the issue of possession of the black bag. The trial court's discretion in weighing the possible prejudice against the real probative effect of this evidence will not be disturbed in these circumstances.

Accordingly, we conclude that the trial court properly admitted into evidence the defendant's gun permit.

The judgment is affirmed.

In this opinion BORDEN, PALMER and PETERS, Js., concurred.

KATZ, J., concurring. I agree with the majority that *State* v. *Dukes*, 209 Conn. 98, 547 A.2d 10 (1988) is controlling. In *Dukes*, this court held that the "automobile exception permits a warrantless search of an automobile whenever the police have probable cause to do so"; id., 120; and that this exception necessarily also permits a search of any container found in the car, such as a locked box. Id., 125–27. Recognizing this hurdle, the defendant, at oral argument before this court, argued that even if *Dukes* is controlling, we should overrule that case and hold that pursuant to article first, § 7, of the Connecticut constitution, a warrantless search of a closed container within an automobile is not authorized under the automobile exception to the warrant requirement. Although it is certainly a related issue, a decision about whether to overrule such significant precedent is not integral to the issue on appeal. Because the defendant did not brief the issue of whether to overrule *Dukes*, I would not decide that question

in this case. I write separately, however, to highlight the issue.

We have repeatedly acknowledged the significance of stare decisis to our system of jurisprudence because it gives stability and continuity to our case law. *Jolly, Inc.* v. *Zoning Board of Appeals*, 237 Conn. 184, 196, 676 A.2d 831 (1996). Stare decisis is "a formidable obstacle to any court seeking to change its own law." C. Peters, "Foolish Consistency: On Equality, Integrity, and Justice in Stare Decisis," 105 Yale L.J. 2031, 2036 (1996). It "is the most important application of a theory of decisionmaking consistency in our legal culture." Id., 2037. Moreover, the doctrine does more than merely push courts in hard cases, "where they are not convinced about what justice requires, toward decisions that conform with decisions made by previous courts." Id., 2090. Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency. A. Kronman, "Precedent and Tradition," 99 Yale L.J. 1029, 1038–39 (1990) ("respect for past decisions is desirable to the extent that it increases the sum of social welfare . . . by enhancing the law's predictability, economizing judicial resources, strengthening the prestige of legal institutions, etc.").

"Whether stare decisis serves the interests of judicial efficiency, protection of expectations, maintenance of the rule of law, or preservation of judicial legitimacy, however, is not dispositive. The value of adhering to precedent is not an end in and of itself, however, if the precedent reflects substantive injustice. Consistency must also serve a justice related end. B. Cardozo, The Nature of the Judicial Process (1921) p. 150 (favoring rejection of precedent when it 'has been found to be inconsistent with the sense of justice or with the social

welfare'). When a prior decision is 'seen so clearly as error that its enforcement [is] for that very reason doomed' . . . *Planned Parenthood of Southeastern Pennsylvania* v. *Casey*, 505 U.S. 833, 854, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992); the court should seriously consider whether the goals of stare decisis are outweighed, rather than dictated, by the prudential and pragmatic considerations that inform the doctrine to enforce a clearly erroneous decision." *Conway* v. *Wilton*, 238 Conn. 653, 659, 680 A.2d 242 (1996).

Indeed, this court has long believed that although "[s]tare decisis is a doctrine developed by courts to accomplish the requisite element of stability in court-made law, [it] is not an absolute impediment to change. . . . [S]tability should not be confused with perpetuity. If law is to have a current relevance, courts must have and exert the capacity to change a rule of law when reason so requires. . . . [I]t is more important that the court should be right upon later and more elaborate consideration of the cases than consistent with previous declarations. Those doctrines only will eventually stand which bear the strictest examination and the test of experience." (Citations omitted; internal quotation marks omitted.) *White* v. *Burns*, 213 Conn. 307, 335–36, 567 A.2d 1195 (1990).

Since *State* v. *Dukes*, supra, 209 Conn. 98, this court has "determined in some instances that the protections afforded to the citizens of this state by our own constitution go beyond those provided by the federal constitution, as that document has been interpreted by the United States Supreme Court." *State* v. *Geisler*, 222 Conn. 672, 684, 610 A.2d 1225 (1992). In *State* v. *Miller*, 227 Conn. 363, 386–87, 630 A.2d 1315 (1993), we noted that "[i]n light of our demonstrated constitutional preference for warrants and our concomitant obligation

narrowly to circumscribe exceptions to the state constitutional warrant requirement, we conclude that a warrantless automobile search supported by probable cause, but conducted after the automobile has been impounded at the police station, violates article first, § 7, of the Connecticut constitution." This court also has determined the validity of searches and seizures under the state constitution without deciding the validity of the state's actions under the federal constitution. In *State* v. *Joyce*, 229 Conn. 10, 24–27, 639 A.2d. 1007 (1994), we held that the warrantless chemical testing of the defendant's burnt clothing, which had been cut off by the paramedics who had treated the defendant at the scene of a fire and thereafter seized by the police pursuant to their community caretaking function, violated article first, § 7, of the state constitution because the defendant had a reasonable expectation of privacy in the items and the search was not otherwise justified by exigent circumstances. In *State* v. *White*, 229 Conn. 125, 147–55, 640 A.2d 572 (1994), we held that the defendant's compelled temporary removal from a correctional center, where he was being detained on another charge, for a lineup, in the absence of compliance with the statutory requirements for an arrest warrant or search warrant, and there being no other authority under Connecticut law for such a process, constituted a violation of article first, § 9, of our state constitution. Such recent interpretation of our state constitution suggests at least that the automobile exception to the warrant requirement should not have been adopted as part of our article first, § 7 jurisprudence.