******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* CHUMELL WILLIAMS
(SC 19103)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Vertefeuille, Js.

*Argued October 24, 2013—officially released April 29, 2014*

*Neal Cone*, senior assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, *Jayne Kennedy*, senior assistant state's attorney, and *Jennifer F. Miller*, special deputy assistant state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. The sole issue in this appeal is whether we should overrule our precedent holding that the automobile exception to the warrant requirement under the state constitution applies to a closed container located in the trunk of a vehicle. The defendant, Chumell Williams, appeals[1] from the judgment of conviction, rendered following his conditional plea of nolo contendere; see General Statutes § 54-94a; of one count of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), one count of possession of narcotics with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-279 (d), and one count of possession of a weapon in a motor vehicle in violation of General Statutes (Rev. to 2009) § 29-38. On appeal, the defendant challenges the denial of his motion to suppress with respect to the narcotics and handgun that were found in a plastic bag inside the trunk of his vehicle. In doing so, the defendant asks this court to decide whether article first, § 7, of the Connecticut constitution[2] prohibits the warrantless search of a closed container located in the trunk of a vehicle conducted during an otherwise constitutional warrantless search of an automobile. We answer the question in the negative and, accordingly, affirm the judgment of the trial court.

In its oral decision on the defendant's motion to suppress, the trial court made the following factual findings. "On March 25, 2010, three Waterbury police officers were patrolling Waterbury streets in an unmarked police vehicle and in plainclothes. At approximately 9 p.m., the officers stopped their vehicle at a red light at the intersection of East Farm [Street] and North Main Street. This intersection is part of a high crime area where the police have made numerous arrests for narcotic and firearm offenses. The area is well lit and the visibility was good that evening.

"While stopped at the intersection they observed the defendant's vehicle, a black Maxima, parked along the curb on West Farm [Street], very close to the intersection of West Farm [Street] and North Main Street. East Farm [Street] becomes West Farm [Street] after it crosses North Main Street. An individual was standing at the driver's window of the defendant's vehicle. The police then observed the driver hand a small item to the individual standing outside the window. The driver of the defendant's vehicle subsequently turned out to be the defendant.

"Based on the officers' training and experience, they reasonably suspected that they may have just witnessed a drug sale and decided that they should investigate further. Accordingly, the officers drove [their] vehicle through the intersection and parked further down along

the curb on West Farm [Street]. They exited the vehicle and proceeded on foot toward the defendant's vehicle with their police badges displayed around their necks. As the officers neared the man, later identified as Shawn Warner, standing outside of the vehicle, they demanded that he show the officers his hands. Warner then proceeded to drop on the ground a small plastic bag containing a white rock like substance, which the officers, based upon their training and experience, reasonably concluded was cocaine. Having witnessed Warner drop this item, the officers more than confirmed their reasonable and articulable suspicion that Warner and the defendant had been engaged in a narcotics transaction.

"One of the officers placed Warner under arrest while another began to direct his attention to the black Maxima and the driver of the vehicle. A strong odor of unburnt marijuana was coming from the car. There were four occupants in the car: two in the front seats and two in the rear seats. The officer immediately demanded that the defendant show him his hands. The defendant did not immediately comply, but instead appeared to place his hands in the center console of the vehicle. It reasonably appeared to the officer that the defendant was either trying to conceal an item or to reach for a weapon. The officer again demanded that the defendant show him his hands, and the defendant subsequently complied. The defendant was removed from the vehicle and placed in handcuffs. The officers then called for backup assistance on their radio. Once backup arrived, the other individuals were removed from the car.

"At this point, one of the officers opened the center console and discovered what reasonably appeared to be crack and powder cocaine. While doing so, he also observed what reasonably appeared to be four bags of marijuana on the front passenger side floor. After these items were removed from the vehicle, the officers continued to smell a strong odor of marijuana in the car, which reasonably led them to believe that . . . additional quantities of marijuana [were] still in the car. The smell was strongest in the backseat area and appeared to be emanating from behind one of the seats.

"While searching the backseat area, the officers pushed a button on one of the rear seats which then permitted the seat to be flipped down. This mechanism thereby allowed anyone sitting in the rear seat to easily access a portion of the trunk of the vehicle. Behind the seat, the officers immediately observed a dark plastic bag that smelled strongly of marijuana. The officers opened the bag and saw what reasonably appeared to be powder cocaine, marijuana, and a second opaque black plastic bag. The second bag was heavy and conformed around an object that appeared to be a handgun. [An] officer opened the bag and confirmed that it, in fact, did contain a firearm. All of the evidence was

seized, [and] the defendant [was] arrested and charged with narcotics and firearm offenses." On the basis of these findings, the trial court denied the defendant's motion to suppress. The defendant subsequently entered a conditional plea of nolo contendere and the court rendered judgment of guilty in accordance with the defendant's plea. This appeal followed.

On appeal, the defendant does not challenge the search of the passenger compartment of his vehicle or the seizure of the narcotics found in the center console and on the passenger side floor. Nor does he argue that the police did not have probable cause to search the trunk. The defendant's sole claim is that the search of the bags inside the trunk, which revealed powder cocaine, marijuana and a handgun, could not be conducted within the automobile exception to the warrant requirement under the state constitution. The defendant contends that when the police have probable cause to believe that an item contains contraband or evidence of a crime, after a proper seizure, they must obtain a warrant to search any such item unless exigent circumstances exist.

In support of his argument, which requires us to reconsider our prior holdings that our state constitution allows the police to conduct a warrantless search of a closed container located in an automobile pursuant to the automobile exception, the defendant claims that a *Geisler*[3] analysis demonstrates that our state constitution affords greater protections than the federal constitution. He first details the sociological and policy considerations that weigh in favor of excluding the search of closed containers located in vehicles from the ambit of the automobile exception under the state constitution. He identifies several instances in which this court has diverged from search and seizure jurisprudence as it has been applied under the federal constitution, and highlights a number of sister states that also have taken such an approach. Acknowledging that the fourth amendment to the federal constitution permits the search of a closed container located in a vehicle that properly is being searched pursuant to the automobile exception, the defendant urges this court to recognize an additional exigency requirement to the search of a closed container under the state constitution.[4] Applying the *Geisler* factors, we reject his claim and conclude that the state constitution does not afford greater protections than the federal constitution under the facts of this case.[5]

We do not lightly overrule precedent. "[T]he doctrine of [s]tare decisis, although not an end in itself, serves the important function of preserving stability and certainty in the law . . . [and] a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . Stare decisis is justified because it allows for predictability in the ordering

of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency. . . . It is the most important application of a theory of decisionmaking consistency in our legal culture and . . . is an obvious manifestation of the notion that decisionmaking consistency itself has normative value. . . . We, therefore, will respect our prior decisions unless strong considerations to the contrary require us to reexamine them . . . ." (Citation omitted; internal quotation marks omitted.) *Bateson* v. *Weddle*, 306 Conn. 1, 9–10, 48 A.3d 652 (2012).

In considering whether this court should overturn the holdings of *State* v. *Dukes*, 209 Conn. 98, 120, 547 A.2d 10 (1988), which recognized the automobile exception under the state constitution, and *State* v. *Longo*, 243 Conn. 732, 739, 708 A.2d 1354 (1998), which affirmed *Dukes* with respect to the constitutionality of the search of a closed container during a warrantless automobile search, and conclude that the state constitution affords greater protections than the federal constitution, we turn to the factors set forth in *Geisler*: "(1) the text of the operative constitutional provisions; (2) related Connecticut precedents; (3) persuasive relevant federal precedents; (4) persuasive precedents of other state courts; (5) historical insights into the intent of our constitutional forebears; and (6) contemporary understandings of applicable economic and sociological norms, or as otherwise described, relevant public policies." *State* v. *Lockhart*, 298 Conn. 537, 547, 4 A.3d 1176 (2010).

With respect to the first and fifth *Geisler* factors, we have previously stated that "neither the text nor the history of article first, § 7, [of the state constitution] provides any reason to depart from the United States Supreme Court's interpretation of the federal constitution . . . . As we have previously held, the text of article first, § 7, is similar to the text of the fourth amendment. . . . Additionally, the history of article first, § 7, does not illuminate the appropriate scope of the automobile exception because the modern nature and function of the automobile, on which that exception is predicated, were unknown in 1818." (Citation omitted; footnote omitted.) *State* v. *Miller*, 227 Conn. 363, 381–82, 630 A.2d 1315 (1993). Moreover, "[w]ith respect . . . to whether the historical circumstances surrounding the adoption of article first, § 7, support the defendant's claim to greater protections under that provision than are afforded by the federal constitution, we have stated that [t]he declaration of rights adopted in 1818 appears to have its antecedents in the Mississippi constitution of 1817, which in turn derived from the federal bill of rights and the Virginia declaration of rights of 1776. . . . The search and seizure provision in our 1818 constitution, then article first, § 8, closely resembles the fourth amendment to the United States constitution. Although its enumeration was changed to

article first, § 7, when the 1965 constitution incorporated article first, § 4, into article seventh, its language has not been altered since its original adoption. . . . The language of article first, § 7, which was based upon the fourth amendment, was adopted with little debate. . . . Thus, the circumstances surrounding the adoption of article first, § 7, lend weight to the view that, in most cases, a practice permitted under the fourth amendment is permissible under article first, § 7." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Jenkins*, 298 Conn. 209, 267, 3 A.3d 806 (2010). Thus, we focus on the other factors articulated in *Geisler*.

We now examine federal precedent. In *United States* v. *Ross*, 456 U.S. 798, 799–800, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982), the United States Supreme Court addressed the scope of a permissible search under the automobile exception to the warrant requirement pursuant to the fourth amendment to the United States constitution. In that case, a warrantless roadside search of the trunk of the defendant's vehicle yielded a paper bag that was later determined to contain heroin. Id., 801. After detailing the history of the automobile exception, which first had been recognized in *Carroll* v. *United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925), the court concluded that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States* v. *Ross*, supra, 825. It reasoned that "[t]he scope of a warrantless search of an automobile . . . is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." Id., 824. In reaching this conclusion, the court observed that "[w]hen a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions . . . between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." Id., 821.

Additionally, the court recognized that "the decision in *Carroll* was based on the [c]ourt's appraisal of practical considerations viewed in the perspective of history. It is therefore significant that the practical consequences of the *Carroll* decision would be largely nullified if the permissible scope of a warrantless search of an automobile did not include containers and packages found inside the vehicle. Contraband goods rarely are strewn across the trunk or floor of a car; since by their very nature such goods must be withheld from public view, they rarely can be placed in an automobile unless they are enclosed within some form of container." Id., 820.

Since *Ross*, the United States Supreme Court has consistently upheld the central tenets of the decision. See, e.g., *Maryland* v. *Dyson*, 527 U.S. 465, 467, 119 S. Ct. 2013, 144 L. Ed. 2d 442 (1999) (affirming denial of suppression of drugs found in bag in trunk); *Wyoming* v. *Houghton*, 526 U.S. 295, 301–302, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999) (affirming search of purse belonging to defendant who was passenger in vehicle and declining to recognize distinction between search of driver's personal property and search of passenger's personal property); *Pennsylvania* v. *Labron*, 518 U.S. 938, 940, 116 S. Ct. 2485, 135 L. Ed. 2d 1031 (1996) (if vehicle readily mobile and probable cause exists to believe it contains contraband, searches which revealed drugs were not unconstitutional); *California* v. *Acevedo*, 500 U.S. 565, 580, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991) (concluding that police "may search automobile and containers within it where they have probable cause to believe contraband or evidence is contained").

Of course, federal circuit courts also have consistently followed *Ross*. See *United States* v. *Howard*, 489 F.3d 484, 492–94 (2d Cir.) (reversing suppression of multiple bags containing drugs found when warrantless search occurred after defendants lured to police barracks), cert. denied, 552 U.S. 1005, 128 S. Ct. 525, 169 L. Ed. 2d 365 (2007); *United States* v. *Gagnon*, 373 F.3d 230, 240 (2d Cir. 2004) (reversing suppression of more than $300,000 found in duffel bag located in cab of tractor trailer).[6] Although the defendant cites Justice Marshall's dissent in *United States* v. *Ross*, supra, 456 U.S. 831, which characterized the majority's decision in *Ross* as creating a probable cause exception to the warrant requirement and which asserted that the rationale for the automobile exception does not extend to closed containers located inside of a vehicle, as persuasive authority, the weight of federal authority leads to the conclusion that federal precedent does not support the defendant's position.

We now examine our state precedent. We begin with our decisions in *State* v. *Dukes*, supra, 209 Conn. 98, and *State* v. *Longo*, supra, 243 Conn. 732. In *State* v. *Dukes*, supra, 100, the police stopped the defendant's vehicle for a speeding violation. When a driver's license suspension check revealed that the defendant's license had been suspended, the officer placed the defendant under arrest and searched him. Id., 101. The search revealed drugs and drug paraphernalia. Id., 101–102. On the basis of the observations that he had made during the stop, the officer proceeded to search the vehicle. Id., 102–103. On the backseat of the vehicle, the officer located a small, locked safe. Id., 103. After the defendant refused to inform the officer which key from a ring of keys found on the driver's seat would unlock the safe, the officer found the correct key and opened the safe. Id. Inside the safe was a revolver, narcotics and evi-

dence that suggested an intent to sell the narcotics. Id. The trial court denied the defendant's motion to suppress the evidence taken from his person and vehicle. Id., 100. The defendant appealed, urging this court to determine that the state constitution afforded greater protections than the federal constitution and that the search was unconstitutional. Id., 104.

This court first noted that we were "required in this case for the first time to interpret our state constitution's proscription against unreasonable searches and seizures in the context of a highway motor vehicle stop and arrest." Id., 116. We held that the "exception to the warrant requirement in an automobile search [under the fourth amendment to the United States constitution] demands that the searching officer have probable cause to believe that the vehicle contains contraband. . . . So does article first, § 7, of our constitution. We believe that this officer had . . . objective facts upon which could be based a finding of probable cause to search the defendant's vehicle for contraband." (Citations omitted.) Id., 126–27. Thus, the motion to suppress was correctly denied. Id., 127. Although not explicitly stated, the import of our holding was that the automobile exception necessarily permitted the search of containers found in a vehicle that the police had probable cause to believe contained contraband.

We returned to this issue in *State* v. *Longo*, supra, 243 Conn. 732. In that case, the defendant was a passenger sitting in the backseat of a vehicle. Id., 735. When the police stopped the vehicle for traffic violations, one of the officers, Lieutenant Benjamin Pagoni, detected the odor of marijuana and saw evidence of marijuana. Id., 734. Pagoni also saw the front seat passenger attempt to push a black duffel bag under the front seat. Id. All of the occupants were asked to exit the vehicle and the officers obtained permission from the driver of the car to search it. Id., 735. When Pagoni found the black bag, the defendant informed Pagoni that it belonged to her and that she did not want the bag to be searched. Id. Pagoni, nevertheless, searched the bag and found cocaine as well as other evidence that suggested an intent to sell narcotics. Id. After determining that the police had probable cause to search the vehicle, we concluded that "[b]ecause the black bag was a container which could have held the items that were the object of the search, under our state constitution the police did not have to obtain a search warrant before searching it." Id., 741. Thus, we affirmed our reasoning in *Dukes*, explicitly stating what had been implicitly acknowledged, holding that when the police have "probable cause to search [an] automobile under the automobile exception to the warrant requirement, they also [can] search any containers found in the vehicle that might hold the objects of their search." Id., 737.

Since our decision in *Longo*, neither this court nor the

Appellate Court has reexamined the constitutionality of a search of a closed container located in a vehicle under the state constitution. With the exception of *State* v. *Miller*, supra, 227 Conn. 382, 386–87, in which we declined to follow federal authority with respect to the warrantless search of an automobile after it had been impounded at the police station, our courts consistently have interpreted the state and federal constitutions to afford the same protections with respect to the warrantless searches of automobiles. See, e.g., *State* v. *Winfrey*, 302 Conn. 195, 199, 205–207, 24 A.3d 1218 (2011) (warrantless search of center console of defendant's vehicle); *State* v. *Longo*, supra, 243 Conn. 738 (warrantless search of container located in vehicle); *State* v. *Wilson*, 111 Conn. App. 614, 619 n.6, 960 A.2d 1056 (2008) (noting that defendant conceded that analysis of constitutionality of warrantless search of vehicle was "the same under either our state or federal constitution"), cert. denied, 290 Conn. 917, 966 A.2d 234 (2009); *State* v. *Thomas*, 98 Conn. App. 542, 548, 909 A.2d 969 (2006) (test for probable cause same under state and federal constitutions), cert. denied, 281 Conn. 910, 916 A.2d 53 (2007); *State* v. *Mounds*, 81 Conn. App. 361, 365, 840 A.2d 29 (same), cert. denied, 268 Conn. 914, 845 A.2d 416 (2004); see also *State* v. *Smith*, 257 Conn. 216, 229–30, 777 A.2d 182 (2001) (refusing to extend *Miller* to cars searched at readily accessible public venues). Although we need not decide whether in materially different circumstances the state constitution might provide greater protection than the federal constitution in a case involving the warrantless search of an automobile, we conclude that Connecticut precedent does not support the position of the defendant in the present case.

The defendant's arguments to the contrary are not persuasive. He cites to several cases in which we have not followed federal precedent regarding warrantless searches, and claims that those cases, coupled with Connecticut's strong preference for warrants, weighs in favor of his position. See *State* v. *Miller*, supra, 227 Conn. 377 and n.14 (police need warrant for noninventory search of impounded vehicle); *State* v. *Oquendo*, 223 Conn. 635, 651, 613 A.2d 1300 (1992) (declining to adopt definition of seizure under federal precedent); *State* v. *Geisler*, supra, 222 Conn. 690 (rejecting United States Supreme Court interpretation of exclusionary rule and concluding that "evidence derived from an unlawful warrantless entry into the home be excluded unless the taint of the illegal entry is attenuated by the passage of time or intervening circumstances"); *State* v. *Marsala*, 216 Conn. 150, 171, 579 A.2d 58 (1990) (good faith exception to exclusionary rule does not exist under state constitution).

We first observe that of all the Connecticut cases cited by the defendant, only one addressed the scope of a warrantless search of an automobile. See *State* v.

*Miller*, supra, 227 Conn. 363. *Miller* is distinguishable because, in that case, we recognized that once the circumstances that underlie the justification for the automobile exception no longer exist, for instance, when a vehicle has been impounded at the police station, the "impracticality of obtaining a warrant no longer exists . . . [and] our state constitutional preference for warrants regains its dominant place in [the balance between law enforcement issues and individuals' privacy interests] . . . ." Id., 385. In the case of warrantless on-the-scene automobile searches, however, those circumstances still exist, and, thus "obtaining a warrant would be impracticable in light of the inherent mobility of automobiles and the latent exigency that that mobility creates." Id., 384–85.

With respect to sister states, we conclude that the weight of the decisions from those states does not support the defendant's position. Twenty-two states have considered the constitutionality of a search of a closed container under the automobile exception to the warrant requirement pursuant to their state constitutions.[7] Thirteen states have either explicitly or implicitly followed the *Ross* line of cases.[8] The states that have expressly determined that a search of a container in a vehicle pursuant to the automobile exception is constitutional under their state constitutions have found federal precedent persuasive; see *People* v. *Smith*, 95 Ill. 2d 412, 422, 447 N.E.2d 809 (1983); *State* v. *Bouchles*, 457 A.2d 798, 802 (Me. 1983); or have historically interpreted their search and seizure provisions consistent with the fourth amendment to the United States constitution. See *Berry* v. *State*, 155 Md. App. 144, 175–78, 843 A.2d 93, cert. denied, 381 Md. 674, 851 A.2d 594 (2004); *People* v. *Levine*, 461 Mich. 172, 178–79, 600 N.W.2d 622 (1999); *State* v. *Tompkins*, 144 Wis. 2d 116, 137–38, 423 N.W.2d 823 (1988); *Callaway* v. *State*, 954 P.2d 1365, 1370 (Wyo. 1998). Even in Massachusetts, which recognizes that its state search and seizure provision affords greater protections than the fourth amendment, the Massachusetts Supreme Judicial Court, in *Commonwealth* v. *Cast*, 407 Mass. 891, 907, 556 N.E.2d 69 (1990), did not find any "compelling reason why closed containers found in an otherwise lawful warrantless search of a motor vehicle should come within this special category where [the state constitution] and [f]ourth [a]mendment law diverge." These states have observed that interpreting the state search and seizure provision differently from the fourth amendment in this context would "force the police in every motor vehicle search that turned up a closed container to impound and secure the vehicle while a warrant is obtained . . . not an unobtrusive procedure from the point of view of the defendant's privacy. Such a rule would unnecessarily burden the police and criminal justice system, while providing defendants with insignificant protections against privacy intrusions." (Citation omitted.) Id., 908.

Nine states, on the other hand, have declined to follow *Ross* and its progeny.[9] Six states in this category decline to follow *Ross* because they impose on the automobile exception, generally, an actual exigency requirement that is not imposed by the fourth amendment. Compare *Pennyslvania* v. *Labron*, supra, 518 U.S. 940, with *People* v. *Ruggles*, 39 Cal. 3d 1, 9–13, 702 P.2d 170, 216 Cal. Rptr. 88 (1985); *State* v. *Wallace*, 80 Haw. 382, 400–401 n.16, 910 P.2d 695 (1996); *State* v. *Pena-Flores*, 198 N.J. 6, 20–30, 965 A.2d 114 (2009); *State* v. *Gomez*, 122 N.M. 777, 788, 932 P.2d 1 (1997); *State* v. *Savva*, 159 Vt. 75, 87–88, 616 A.2d 774 (1991); *State* v. *Tibbles*, 169 Wn. 2d 364, 368–70, 236 P.3d 885 (2010). The three remaining states that have deviated from *Ross* do so for distinct reasons. Indiana employs a different test for establishing constitutionality under its state constitution. *Peters* v. *State*, 888 N.E.2d 274, 280 (Ind. App. 2008) ("[t]o determine whether a search violated the Indiana [c]onstitution, our courts must evaluate the reasonableness of the police conduct under the totality of the circumstances"), citing *Myers* v. *State*, 839 N.E.2d 1146, 1153 (Ind. 2005) ("While almost identical in wording to the federal [f]ourth [a]mendment, the Indiana [c]onstitution's [s]earch and [s]eizure clause is given an independent interpretation and application. . . . To determine whether a search or seizure violates the Indiana [c]onstitution, courts must evaluate the reasonableness of the police conduct under the totality of the circumstances." [Citations omitted; internal quotation marks omitted.]). Montana recognizes a separate constitutional provision that guarantees the right to individual privacy to afford greater protections. *State* v. *Logan*, 311 Mont. 239, 243–44, 53 P.3d 1285 (2002). Finally, New Hampshire does not recognize an automobile exception under its state constitution at all. *State* v. *Sterndale*, 139 N.H. 445, 449, 656 A.2d 409 (1995).

Although, in some circumstances, we have deviated from federal precedent in interpreting our state search and seizure provision, we have never adopted the justifications set forth by the states that have rejected *Ross*. Unlike New Hampshire, Connecticut does recognize an automobile exception to the warrant requirement under our state constitution. Moreover, an exigency requirement for a warrantless on-the-scene automobile search has never entered into our analysis of the automobile exception, and we do not have a separate privacy provision in the Connecticut constitution that we have construed to afford Connecticut citizens additional protections beyond those that are provided in the search and seizure provision. Conversely, we have found federal authority to be persuasive in other search and seizure cases when interpreting our state constitution, and, significantly, previously have followed federal authority with respect to this issue. Thus, we conclude that the reasoning of the states that have followed *Ross* is more persuasive and that the justifications of states

that reject *Ross* are inapplicable to Connecticut search and seizure jurisprudence.

Finally, we consider whether the defendant's public policy arguments are persuasive. The defendant first argues that the Connecticut constitution affords greater protections than the federal constitution by pointing to this state's constitutional preference for warrants. He notes that the warrant process reduces the number of unreasonable searches and seizures of the property of innocent citizens, provides a long-term deterrent effect on police officers seeking warrants without probable cause, and provides benefits to both individuals and society because people will be assured of the lawful authority of the search, thus, reducing instances of resistance. Moreover, the warrant process creates a record for judicial review.

The defendant also argues that the two reasons proffered as justification for the automobile exception—the diminished expectation of privacy in vehicles and the latent exigency inherent in the mobility of automobiles—are less compelling when applied to closed containers inside automobiles. He maintains that, despite assertions to the contrary, the automobile has become an extension of the stationary home and a repository of personal effects, and that it is a mistake to apply the diminished expectation of privacy theory to items that are stored out of sight or in locked compartments. With respect to the latent exigency justification, the defendant asserts that there are fewer practical problems with the temporary detention of a container than with an automobile. He contends that the burden of obtaining a warrant is significantly lower since the federal automobile exception was recognized in 1925 due to the inability of police departments to make use of technological advancements like telephonic or electronic warrants. We are not persuaded.

The defendant is correct that this court consistently has expressed a constitutional preference for warrants. "Our constitutional preference for warrants reflects a goal of protecting citizens from unjustified police intrusions by interposing a neutral decisionmaker between the police and the object of the proposed search." *State v. Miller*, supra, 227 Conn. 382. This preference is overcome only in specific and limited exceptions, which "derive primarily from acknowledged interests in protecting the safety of the police and the public and in preserving evidence." Id., 383. We also have recognized the automobile exception as a matter of state constitutional law; see *State v. Dukes*, supra, 209 Conn. 126; and, thus, already have determined that "[t]he balance between law enforcement interests and individuals' privacy interests . . . tips in favor of law enforcement in the context of an on-the-scene automobile search." *State v. Miller*, supra, 385. Thus, our constitutional preference for warrants does not answer the question of

whether the state constitution affords greater protections than the federal constitution in this context.

With respect to the defendant's challenge to the justifications for the automobile exception as applied to containers found in automobiles, that argument is not persuasive. Even if we were to assume that, today, the automobile has become an extension of the home and a repository of personal effects, such a conclusion was no less true in 1982, when the United States Supreme Court decided *Ross*, in 1988, when this court decided *Dukes*, or in 1998, when we reaffirmed *Dukes* in *Longo*. In fact, the United States Supreme Court in *Ross* addressed this very concern, concluding that "an individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband. Certainly the privacy interests in a car's trunk or glove compartment may be no less than those in a movable container." *United States* v. *Ross*, supra, 456 U.S. 823. Such reasoning, however, does not compel the conclusion that a container located in a vehicle has a greater privacy interest.[10] Indeed, the New York Court of Appeals reasoned that the considerations that underlie the recognition of the automobile exception "should apply to containers within the passenger compartment as well as to the compartment itself. Such containers, as distinct from their contents, are exposed to public view, and generally are subject to the same risk of theft or intrusion as other articles in the passenger compartment. Likewise, the special problems created by the mobility of automobiles apply equally to containers in the compartment. In both cases, the impracticability of obtaining a warrant and the danger that evidence may be lost in the interim merge as supportable bases for an exception to the warrant requirement."[11] *People* v. *Belton*, 55 N.Y.2d 49, 54, 432 N.E.2d 745, 447 N.Y.S.2d 873 (1982).

Finally, even if we were to conclude that the burden of obtaining a warrant has lessened since the automobile exception was recognized in 1925, and that there are technological advances that a police department could employ, the defendant has failed to demonstrate that such technological advances were not available in 1988, when we first recognized the automobile exception as it pertains to containers located in vehicles under our state constitution, or that the police in the present case had access to the technological advances that he argues renders the warrantless search of containers unnecessary.

On the basis of our analysis, we decline to overrule *Dukes* and *Longo*, and accept the defendant's invitation to engraft onto our automobile exception an exigency requirement for the search of a closed container under the state constitution. Instead, we reaffirm our settled jurisprudence regarding the automobile exception

which allows police officers with probable cause to search any and all containers located in a vehicle that properly is subject to a warrantless on-the-scene automobile search.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Article first, § 7, of the constitution of Connecticut provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[3] *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992).

[4] Because the defendant did not raise this constitutional claim at the trial court, he seeks review of this issue pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Because the record is adequate and the claim is of constitutional magnitude, we will review the claim.

[5] We recognize that our analysis of the defendant's claim under *Geisler* requires us to reconsider *State* v. *Dukes*, 209 Conn. 98, 120, 547 A.2d 10 (1988), which recognized the automobile exception under the state constitution, and *State* v. *Longo*, 243 Conn. 732, 739, 708 A.2d 1354 (1998), which affirmed *Dukes* with respect to the constitutionality of the search of a closed container during a warrantless automobile search. Although we normally undertake *Geisler* analysis when the state constitutional protection question has not yet been addressed by this court, because our decision in *Dukes* preceded *Geisler*, and the applicability of the *Geisler* factors was not raised in *Longo*, we will review the defendant's *Geisler* claim, despite the procedural irregularity.

[6] Additionally, we have not discovered any Connecticut case law that has interpreted the federal constitution in a way that conflicts with the federal constitutional principles articulated in *Ross*; see *State* v. *Jenkins*, supra, 298 Conn. 265; or that has observed any ambiguity or challenge to the continued validity of the automobile exception as expressed by *Ross*. See, e.g., *State* v. *Crespo*, 145 Conn. App. 547, 558, 76 A.3d 664, cert. granted on other grounds, 310 Conn. 953, 81 A.3d 1181 (2013); *State* v. *Duffus*, 125 Conn. App. 17, 28, 6 A.3d 167 (2010), cert. denied, 300 Conn. 903, 12 A.3d 572 (2011); *State* v. *Orellana*, 89 Conn. App. 71, 84, 872 A.2d 506, cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005).

[7] Although Utah and New York have considered the constitutionality of a search of a closed container under their state constitutions, because of the irregularities in their jurisprudence on this issue, we do not include them in our analysis. Utah has determined that the search of a closed container located in a vehicle is constitutional under its state constitution, but the viability of this conclusion is questionable. In *State* v. *Anderson*, 910 P.2d 1229, 1236–37 (Utah 1996), the Utah Supreme Court concluded that a warrantless search of a vehicle that revealed marijuana located in a canister and bag was constitutional under both the state and federal constitutions. It based that conclusion on its interpretation that the automobile exception requirements—probable cause and exigent circumstances—were the same under both constitutions. Id. Only a plurality, however, endorsed the position that "Utah courts should construe [the state search and seizure provision] in a manner similar to constructions of the [f]ourth [a]mendment except in compelling circumstances." Id., 1235. Since the United States Supreme Court decided *Pennyslvania* v. *Labron*, supra, 518 U.S. 940, which held that exigent circumstances are not a requirement for the automobile exception under the fourth amendment, the Utah Supreme Court has not reconsidered the issue. See *State* v. *Brake*, 103 P.3d 699, 703 n.2 (Utah 2004) (declining to "revisit the dormant but unresolved debate in this court over the merits of whether and when to depart from federal [f]ourth [a]mendment doctrine and chart our own course in the realm of search and seizure law based on the protections afforded by article I, [§] 14 of the Utah [c]onstitution"). Thus, it is unclear whether the Utah Supreme Court would come to a different conclusion if reexamining this issue.

Additionally, although the automobile exception that is recognized pursuant to the New York constitution only requires probable cause and permits the search of closed containers, the exception is limited to the passenger compartment and cases in which "police have validly arrested an occupant

of an automobile, and they have reason to believe that the car may contain evidence related to the crime for which the occupant was arrested or that a weapon may be discovered or a means of escape thwarted . . . ." *People* v. *Belton*, 55 N.Y.2d 49, 55, 432 N.E.2d 745, 447 N.Y.S.2d 873 (1982). The New York Court of Appeals has not resolved whether this narrow automobile exception to the warrant requirement under the state constitution extends to containers found in a trunk. Id., 54 n.3.

[8] Eight states have explicitly followed *Ross*: Illinois, Maine, Maryland, Massachusetts, Michigan, Texas, Wisconsin and Wyoming. Five states have implicitly followed *Ross* by identifying the federal constitution and their state constitutions as the basis for a defendant's claim, but citing only to authority that relies on federal principles to support their conclusion that their state constitutions were not violated by the search. See *People* v. *Moore*, 900 P.2d 66, 69–71 (Colo. 1995); *State* v. *Washington*, 687 So. 2d 575, 580 (La. App. 1997); *State* v. *Konfrst*, 251 Neb. 214, 221, 229–32, 556 N.W.2d 250 (1996); *State* v. *Haibeck*, 685 N.W.2d 512, 516–18 (N.D. 2004); *State* v. *Krebs*, 504 N.W.2d 580, 588 (S.D. 1993).

[9] Those states are California, Hawaii, Indiana, Montana, New Hampshire, New Jersey, New Mexico, Vermont and Washington.

[10] In a related context, the United States Supreme Court, in *California* v. *Acevedo*, supra, 500 U.S. 565, expressly rejected the defendant's argument that containers located in vehicles have a higher expectation of privacy. In that case, the court overruled *Arkansas* v. *Sanders*, 442 U.S. 753, 766, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979), a case that had concluded that the police were required to obtain a search warrant to search a briefcase found in the trunk of a vehicle where probable cause did not extend to the automobile. The court in *Sanders* reasoned that "the seizure of a suitcase [is] quite different from the seizure of an automobile. . . . [I]f the [c]ourt . . . require[s] seizure and holding of [a] vehicle, it would . . . [impose] a constitutional requirement upon police departments of all sizes around the country to have available the people and equipment necessary to transport impounded automobiles to some central location until warrants could be secured. Moreover, once seized automobiles [are] taken from the highway the police would be responsible for providing some appropriate location where they could be kept, with due regard to the safety of the vehicles and their contents, until a magistrate ruled on the application for a warrant. Such a constitutional requirement therefore would have imposed severe, even impossible, burdens on many police departments. . . . No comparable burdens are likely to exist with respect to the seizure of personal luggage." (Citation omitted.) Id., 765–66 n.14. When the United States Supreme Court reexamined the issue in *Acevedo*, however, it concluded that "a container found after a general search of the automobile and a container found in a car after a limited search for the container are equally easy for the police to store and for the suspect to hide or destroy. In fact, we see no principled distinction in terms of either the privacy expectation or the exigent circumstances between the paper bag found by the police in *Ross* and the paper bag found by the police here. Furthermore, by attempting to distinguish between a container for which the police are specifically searching and a container which they come across in a car, we have provided only minimal protection for privacy and have impeded effective law enforcement." *California* v. *Acevedo*, supra, 574.

[11] Although the application of the automobile exception in New York is limited to a smaller number of circumstances than has been applied by other states, thus, preventing us from including New York in our analysis of sister states that have considered the issue presently before us, the reasoning that the New York Court of Appeals employed in recognizing an automobile exception under its state constitution is not affected by its limited applicability and remains persuasive.